UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL J. BELLEAU,

        Plaintiff,

v.                                        Case No. 12-C-1198

KEVIN C. GREENE,

        Defendant.

**ORDER DENYING MOTION TO DISMISS**

      Plaintiff Michael J. Belleau alleges in what he has entitled "Civil Liberties Complaint for Summary Judgment that Brown County Assistant District Attorney (ADA) Kevin C. Greene violated his constitutional rights by ordering that he be fitted with a Global Positioning System (GPS) tracking device upon his discharge from commitment under Chapter 980 of the Wisconsin Statutes. Although ADA Greene is not named as a defendant in the caption of Belleau's complaint (no one is), it is his alleged conduct that forms the basis of Belleau's complaint, and so the court has construed the complaint to name him. Upon more careful review, it seems likely that Belleau's real dispute is with the State of Wisconsin, which ADA Greene represents, rather than ADA Greene personally. No doubt that is one of a number of issues that must be sorted out if Belleau's lawsuit is to continue. At least at this point, the court is convinced that it should continue.

      Belleau's complaint, liberally construed, challenges the authority of the Wisconsin Department of Corrections (DOC) under the United States Constitution to compel him to wear a GPS tracking device and submit to continued restrictions on his freedom of movement for the rest of his life, even though he has been discharged from his earlier commitment under Chapter 980.

Under section 301.48 of the Wisconsin Statutes, DOC is required to maintain lifetime tracking of persons previously committed to the custody of the Department of Health Services as sexually violent persons under Chapter 980 who are no longer in custody, along with others who have committed specified sex offenses against a child. Wis. Stat. § 301.48(2). The statute requires DOC to "implement a continuing global positioning tracking system to electronically monitor the whereabouts of persons who are subject to the section." § 301.48(3)(a). For each person subject to the lifetime tracking requirement, DOC is to create individualized inclusion and exclusion zones. § 301.48(3)(c). An "exclusion zone" is defined as "a zone in which a person who is tracked using a global positioning system tracking device is prohibited from entering except for purposes of traveling through it to get to another destination." § 301.48(1)(a). An "inclusion zone" is "a zone in which a person who is tracked using a global positioning system tracking device is prohibited from leaving." § 301.48(1)(c).

In creating exclusion zones, the statute instructs DOC "to focus on areas where children congregate, with perimeters of 100 to 250 feet, and on areas where the person has been prohibited from going as a condition of probation, extended supervision, parole, conditional release, supervised release, or lifetime supervision." § 301.48(3)(c). In creating inclusion zones for a person on supervised release, DOC is instructed to look to § 980.08(9), which requires that individuals granted supervised release from Chapter 980 commitments be restricted to their home for the first year of supervision, except for outings that are under the direct supervision of a DOC escort and are for employment or religious purposes, or for caring for the individual's basic living needs. In addition to monitoring the location of the person subject to the statute, the system is required to immediately alert DOC or the local law enforcement agency having jurisdiction over the exclusion or inclusion

2

zones if the person being tracked stays in any exclusion zone for longer than needed to travel through to get to another destination or if the person leaves any inclusion zone. § 301.48(3)(a)1.

Persons who have been convicted of serious child sex offense, but have not been committed under Chapter 980, may be moved to what the statute calls "passive positioning system tracking" once they are no longer on supervision. § 301.48(2m). "Passive positioning system tracking" does not required DOC to create individualized exclusion and inclusion zones. Instead, it simply "monitors, identifies and records a person's location." § 301.48(1)(dm). As to each system, DOC is required to determine the costs of the global positioning system tracking and determine how much of the cost the person tracked can pay after considering the person's financial resources, his earning capacity, the needs and earning capacity of his dependents, and any other costs of supervision he is required to pay. § 301.48(4)(a) and (d). The person subject to the global positioning system tracking is then required to pay the amount assessed. § 301.48(4)(b).

Belleau's complaint is silent as to whether DOC has created any individualized exclusion or inclusion zones for him, or whether he has been required to pay the costs incurred by the State in tracking him. He does allege, however, that he was discharged from an earlier commitment under Chapter 980 effective July 7, 2010, apparently after the State stipulated that it could not meet its burden to demonstrate that Belleau was still a sexually violent person and that he did not meet the statutory criteria for supervised release. Despite the fact that he was discharged from his commitment, Belleau alleges that as he was being released from custody he was met by two agents from DOC who informed him that they had an order to fit him with a GPS tracking device. Belleau claims that requiring him to submit to electronic monitoring violates rights guaranteed him by the United States Constitution.

3

Belleau's claim is not frivolous. Requiring a person to continuously wear a GPS tracking device is clearly an infringement on one's personal liberty. "Freedom from physical restraint 'has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.'" *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997) (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Having discharged Belleau from his civil commitment under Chapter 980, it is unclear what constitutional authority DOC has for requiring him to wear a GPS tracking device and otherwise limit his freedom. In order to have been committed under Chapter 980 as a sexually violent person, Belleau must have previously committed a sexually violent offense. *See* Wis. Stat. § 980.01(7) (defining "sexually violent person" as a person who has been convicted of, or otherwise found to have committed a sexually violent offense). But he presumably committed that crime and served his sentence long before the State's enactment of its lifetime GPS tracking statute. To punish him for that crime based on a statute enacted after he committed it would seem to violate the Ex Post Facto Clause of Article I, § 10, cl. 1, of the Constitution and the Due Process Clause of § 1 of the Fourteenth Amendment. *Smith v. Doe*, 538 U.S. 84, 97 (2003). No doubt, the State views lifetime tracking not as punishment, but as a measure intended for the protection of the public. Yet, even enactments that are intended solely for the protection of the public will be found punitive and a violation of rights protected by the Constitution if "the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Id.* at 92 (internal quotations and brackets omitted). From its reading of section 301.48, the court is unable to say that Wisconsin's lifetime GPS Tracking System does not reach that level.

At the same time, as ADA Greene's motion to dismiss makes clear, Belleau's ignorance of the law and the procedural history of the case give rise to several jurisdictional issues that must first

4

be addressed before the court can reach the merits of his claim. Prior to filing this action, Belleau had filed a petition in state court seeking termination of lifetime tracking pursuant to Wis. Stat. § 301.48(6). The state court denied his petition on March 30, 2012. Belleau then filed this action in federal court on November 27, 2012. Since then, Belleau has filed several motions which were all denied because he had not yet properly served ADA Greene. ADA Greene has moved to dismiss the action based on insufficient service of process and lack of personal jurisdiction, as well as failure to serve a copy of the summons and complaint on ADA Greene within 120 days after the complaint was filed. Defendant also asserts that Plaintiff's claims are barred by the issue preclusion and *Rooker-Feldman* doctrines. For the reasons that follow, Defendant's motion will be denied, at least for now.

As this Court stated previously in this matter, the plaintiff is responsible for serving the summons and complaint on ADA Greene within 120 days after the complaint is filed. Fed. R. Civ. P. 4(c)(1) and (m). Personal service of the summons and complaint must be made by "[a]ny person who is at least 18 years old *and not a party*." Fed. R. Civ. P. 4(c)(2) (emphasis added). The summons and complaint may be served by (1) delivering a copy of the summons and complaint to the individual personally; (2) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(2). Once service has been completed, proof of service in the form of the server's affidavit must be filed with the court. Fed. R. Civ. P. 4(l)(1).

Belleau filed his complaint on November 27, 2012, giving him until March 28, 2013, to serve ADA Greene with the summons and complaint. He has failed to properly do so within the

5

120 days. On March 4, 2013, Belleau filed "proof of service" stating that *he* served the summons and complaint, but such service is improper because Belleau is plainly a party to this action and is therefore disqualified from personally serving the summons and complaint. ADA Greene also contends that personal service was never properly achieved because Belleau failed to identify the agent authorized by appointment or law who received the service of process on behalf of ADA Greene. Rather, the "proof of service" only bears a "Received" stamp from the Brown County District Attorney Office.

A court may extend the time for service if a plaintiff shows good cause for the failure to effect service within 120 days. This court has twice informed Belleau of his duty to serve ADA Greene, including explicitly explaining that a party to the action (i.e. the Plaintiff himself) cannot serve the summons and complaint. (ECF Nos. 8, 13.) It has even explained that, upon his request, the court can direct the United States Marshal to complete service. (ECF No. 8, at 1.) Yet, he has failed to do so properly. Nevertheless, it makes little sense to dismiss the case on that basis since the dismissal would be without prejudice and Belleau could simply start over again. Although clearly misunderstanding the court's previous orders, Belleau has diligently attempted to properly serve ADA Greene. Moreover, given his pro se status, it would be inappropriate to dismiss the suit on this basis at this point, especially since his claim may have merit. Belleau will therefore be given an additional 120 days to properly serve ADA Greene.

ADA Greene also argues that Belleau's claims must be dismissed on the merits because they are barred under the doctrine of issue preclusion and the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine precludes federal district courts from exercising jurisdiction to review final state-court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court*

6

*of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Feldman*, 544 U.S. at 284. Because the *Rooker-Feldman* doctrine is jurisdictional in nature, its applicability must be determined before reaching the merits or considering ADA Greenes' arguments regarding the applicability of affirmative defenses. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554-55 (7th Cir. 1999) (citing *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996) ("Where *Rooker-Feldman* applies, lower federal courts have no power to address other affirmative defenses, including res judicata.")).

In determining whether the doctrine bars the district court from hearing the plaintiff's claims, "the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996). If the injury complained of was not caused by the judicial decision and is not "inextricably intertwined" with it, the *Rooker-Feldman* doctrine does not apply. *Gen. Auto Serv. Station LLC v. City of Chicago, Ill.*, 319 F.3d 902, 905 (7th Cir. 2003); *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000). "The pivotal inquiry is whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Long v. Shorebank Dev. Corp.*, 182 F.3d at 555 (internal quotations omitted). Accordingly, federal claims alleging a prior injury that a state court failed to remedy are not precluded. *Id.*

In his petition for termination of lifetime tracking filed in state court, Belleau asserted that tracking was improperly imposed without a court order and that he was ineligible for lifetime

7

tracking because he was discharged from his Chapter 980 commitment. The state court denied his petition because a discharge from a Chapter 980 civil commitment does not make a person ineligible for lifetime tracking; rather, it makes them subject to lifetime tracking without the possibility to petition for removal. Wis. Stat. § 301.48(2)(b) and (6)(b)3. Furthermore, the state court explained that Belleau had brought his petition too early–he was ineligible for termination of tracking for at least 20 years. (Actually, because he was previously committed under Chapter 980 as a sexually violent person, Belleau can never petition for termination. Wis. Stat. § 301.48(6)(b)3.)

Belleau's federal complaint appears wholly independent of the state court's decision on his petition for termination of the tracking order, at least to the extent it challenges the constitutionality of the state law imposing the lifetime tracking requirements. While Belleau's pro se complaint is not stated in the most clear terms, he plainly contends that subjecting to lifetime tracking violates his rights under the Constitution. In contrast, the state court decision only considered whether it was lawful to impose lifetime tracking on a person discharged from custody under Chapter 980 without a court order. The state court held that under Wis. Stat. § 301.48, Belleau was, indeed, subject to lifetime tracking, and the court lacked jurisdiction to hear Belleau's petition to terminate lifetime tracking until 20 years after the date on which the period of lifetime tracking began. *See* Wis. Stat. § 301.48(6)(b). To the extent that Belleau now challenges the constitutionality of the law itself or the constitutionality of the law as applied to him, this court need not second guess the decision of the state court. He is essentially asking this Court to answer a different question–that is, *notwithstanding* the language of the statute, may the state constitutionally require that he wear a GPS tracking device for the remainder of his life? The court is not convinced that, at least on the

8

basis of the Belleau's pro se pleadings, the *Rooker-Feldman* doctrine precludes federal subject matter jurisdiction.

Additionally, Belleau's claims are not barred by the issue preclusion doctrine. Issue preclusion bars the relitigation of a factual or legal issue that was actually litigated and decided in an earlier action. *Virnich v. Vorwald*, 664 F.3d 206, 215 (7th Cir. 2012). Belleau's constitutional claims were not actually litigated or decided in the state court. Moreover, a court must also consider several factors to determine whether application of the doctrine would comport with "fundamental fairness" before dismissing a party's claims. *Id.* at 216. Such factors include whether matters of public policy and individual circumstances would render the application of the doctrine unfair and whether there are differences in the extensiveness of proceedings between the two courts that would warrant relitigation of the issue. *Id.* at 217. Because Belleau proceeded pro se both in filing the instant action and in filing the petition for termination of lifetime tracking in state court, it would not comport with fundamental fairness to bar his claims. Accordingly, ADA Greene's motion to dismiss will be denied.

One final matter warrants further comment. In view of the significance of the issue Belleau has attempted to raise and his obvious lack of legal training and difficulty in even naming and serving the proper party, it would appear that this might be an appropriate case for the court to consider recruitment of counsel to represent him. Although civil litigants do not have a constitutional or statutory right to appointed counsel, "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). Traditionally, courts have looked to three factors in determining whether to make such a request: "the merits of the plaintiff's claim, the plaintiff's diligence in attempting to obtain a lawyer, and the plaintiff's financial ability

9

to retain counsel." *Jones v. WFYR Radio/RKO General*, 626 F.2d 576, 577 (7th Cir. 1980), *overruled on other grounds, Randle v. Victor Welding Supply Co.*, 664 F.2d 1064 (7th Cir. 1981). More recently, the Seventh Circuit has emphasized the importance of determining whether, given the difficulty of the case, the pro se plaintiff appears competent to litigate it himself. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). The assessment of the pro se litigant's competence to represent himself, requires consideration of two intertwined inquiries: "the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Id.* at 655. "[T]he question is whether the difficulty of the case-factually and legally-exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Id.* The court should also consider whether the presence of counsel would likely make a difference in the case. *Id.* at 654-55.

Here, because Belleau had sufficient funds to pay his full filing fee, he was not permitted to proceed *in forma pauperis*. But it is clear from his submission that he lacks the financial resources that would be needed to pay counsel the fee that would be required. Given the significance and the complexity of the issues that Belleau appears to be raising, and his demonstrated difficulties in successfully presenting his case thus far, he seems to lack the capacity to coherently present his case. Counsel could both expedite consideration of the merits of the case and help to clarify the issues. On the other hand, Belleau has not requested the court to recruit counsel on his behalf, nor has he made a showing that he has tried to interest an attorney in accepting his case on a contingency fee basis. In this regard, it should be noted that this is the kind of case in which fees may be recoverable from the defendant if the plaintiff prevails. *See* 42 U.S.C. § 1988. Absent a specific request from Belleau and a showing that he has been unable to recruit

10

counsel on his own, the court will refrain from recruiting counsel for him at this time. If Belleau wants an attorney to represent him, however, and is unable to obtain counsel on his own, he should file a motion requesting that the court recruit counsel for him.

In sum, ADA Greene's motion to dismiss is denied, and Belleau is granted an extension of 120 days in which to properly serve the defendant. In addition, if Belleau wishes to have an attorney represent him and cannot obtain an attorney on his own, he should file a motion requesting counsel and explaining why he needs court assistance in obtaining an attorney.

**SO ORDERED** this     13th     day of May, 2013.

                                               s/ William C. Griesbach
                                              William C. Griesbach, Chief Judge
                                              United States District Court