UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

**MICHAEL J. BELLEAU,**

    Plaintiff,

vs.                                                                               Case No. 12-cv-1198 (WCG)

**EDWARD F. WALL, in his**
**official capacity as Secretary of the**
**Wisconsin Department of Corrections,**
**and DENISE SYMDON, in her**
**official capacity as the Administrator of**
**the Division of Community Corrections,**

    Defendants.

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

The Plaintiff, Michael J. Belleau, by his undersigned attorneys, for his complaint against the Defendants, alleges as follows:

**INTRODUCTION**

1. This action challenges the constitutionality of Wis. Stat. § 301.48, Defendants' enforcement of which requires that Plaintiff Michael J. Belleau: submit to the Wisconsin Department of Corrections' ("DOC") round-the-clock attachment of a "global positioning system" (GPS) tracking device that remains on his body twenty-four hours a day for the remainder of his life; be restrained in his home on a daily basis and restricted to his home periodically when DOC staff check on the device; be subject to exclusion from specified "exclusion zones" or a requirement to remain in specified "inclusion zones"; have his public and private

1

whereabouts continuously electronically monitored without a warrant or probable cause to believe he has committed or is about to commit a crime; and pay the DOC a monthly "monitoring fee" for the attachment and maintenance of the device.

2. Wis. Stat. § 301.48 (the "GPS monitoring statute"), as applied to Mr. Belleau, violates the Ex Post Facto Clause of Article 1, Section 10 of the United States Constitution, because it imposes punishment for conduct he committed long before the statute was enacted.

3. It also violates Mr. Belleau's Fourth Amendment right to be free of unreasonable searches and seizures.

4. It also violates his Fourteenth Amendment rights to equal protection of the laws and procedural due process.

## JURISDICTION AND VENUE

5. This action seeks to vindicate rights protected by the United States Constitution and is brought under 42 U.S.C. § 1983. The Court has jurisdiction over this civil rights action pursuant to 28 U.S.C. §§ 1331(a) and 1343(a)(3) and (4). This Court has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202 and its equitable powers to declare the rights of the parties and to grant all further relief that the Court deems necessary and proper. This Court has jurisdiction over Plaintiff's state constitutional claims pursuant to 28 U.S.C. § 1367.

6. Venue herein is proper under 28 U.S.C. § 1391(b) because the Eastern District of Wisconsin is the judicial district in which all events and omissions giving rise to the claims occurred.

## PARTIES

7. Plaintiff Michael J. Belleau is an adult resident of Marinette, Wisconsin.

8. Defendant Edward F. Wall is the Secretary of the Wisconsin Department of Corrections, which is responsible for the monitoring and tracking of persons subject to Wis. Stat. § 301.48. He is sued in his official capacity.

9. Defendant Denise Symdon is the Administrator of the Division of Community Corrections within the Wisconsin Department of Corrections. The Division of Community Corrections monitors and tracks persons on probation, parole and extended supervision, as well as persons placed on GPS monitoring pursuant to Wis. Stat. § 301.48, through the DCC Monitoring Center. Ms. Symdon is sued in her official capacity.

## FACTS

10. Mr. Belleau was convicted in January 1992 of second degree sexual assault of a child for conduct occurring in 1987, for which he was placed on probation. He was discharged from his sentence by DOC on January 10, 1997. In September 1994, he was convicted of first degree sexual assault of a child for conduct occurring in 1988 and 1989. He was sentenced to ten years in state prison for the

September 1994 conviction, but was paroled in 2000. His probation was revoked in October 2001. He was discharged from his sentence on January 3, 2005.

11. Shortly before Mr. Belleau was scheduled to be released from prison in 2003, the State of Wisconsin filed a petition in Brown County Circuit Court seeking to have him committed as a "sexually violent person" under Wis. Stat. § 980.02. The petition was granted on September 15, 2004, and Mr. Belleau was committed to the Sand Ridge Secure Treatment Center, operated by the Wisconsin Department of Health Services.

12. In 2006, seventeen years after the conduct leading to Mr. Belleau's most recent conviction for a sexual offense and one year after he was completely discharged from his criminal sentence, Wisconsin enacted 2005 Wis. Act 431, which created the GPS monitoring and tracking law, codified at Wis. Stat. § 301.48.

13. Section 6 of the same Act required DOC to include on the State's internet sex offender registry "a notice, written in red letters" if the registrant is a "sexually violent person" (codified at Wis. Stat. §301.46(5)(bm)1) and to identify the "name and court of the judge who authorized supervised release or discharge for the person." (Codified at Wis. Stat. §301.46(5)(bm)8.) These provisions are a manifest attempt to shame both offenders and the judges who release them when they are no longer dangerous.

14. The GPS tracking and monitoring law establishes a "continuing global positioning tracking system to electronically monitor the whereabouts of persons who are subject" to the law. Wis. Stat. § 301.48(3)(a).

4

15. The GPS tracking and monitoring law provides that a person, such as Mr. Belleau, who is discharged by a court under Wis. Stat. § 980.09(4) is subject to lifetime GPS monitoring, unless the discharge was immediately preceded by a period of supervised release. Wis. Stat. § 301.48(2)(b)2.

16. In February 2009 and again in February 2010, a psychologist employed by the Sand Ridge Secure Treatment Center, using a combination of actuarial and other risk assessments, determined that Mr. Belleau was not likely to commit a sexually violent act if released and thus concluded that Mr. Belleau did not qualify as a "sexually violent person" under the statutes.

17. On July 2, 2010, in Brown County, the State of Wisconsin, by Assistant District Attorney Kevin C. Greene, stipulated in *State v. Belleau*, No. 2003CI002, that: (1) it could not meet its burden to demonstrate that Mr. Belleau was a sexually violent person under Wis. Stat. § 980.09, and (2) supervised release was inapplicable under Wis. Stat. § 980.08.

18. As a result, in an order signed on July 2, 2010, but filed on July 6, 2010, the Brown County Circuit Court found insufficient grounds to believe Mr. Belleau is a sexually violent person, concluded that he did not meet the criteria for supervised release, and accordingly discharged Mr. Belleau from his commitment under Wis. Stat. § 980.09(4). The discharge was made effective July 7, 2010, to allow the DOC "to arrange GPS monitoring, set-up and compliance."

19. Accordingly, as of 12:01 a.m. on July 7, 2010, the DOC had no authority or control over Mr. Belleau by reason of any criminal sentence or civil commitment, and his civil rights were restored.

20. Nonetheless, approximately eight hours later, at 8 a.m. on July 7, 2010, at the Brown County jail, where he had been detained so that DOC could begin GPS tracking, an agent of DOC attached a GPS monitoring and tracking device to Mr. Belleau's ankle. Mr. Belleau did not consent to the attachment. The DOC agent placed the device on his ankle and tightened it when he objected, causing a blister on his left leg. Pursuant to Wis. Stat. § 301.48, Mr. Belleau will be required to wear a GPS monitor 24 hours per day for the remainder of his life.

21. At no time did Defendants or the State of Wisconsin obtain a warrant or other court order based upon probable cause for Mr. Belleau's detention at the jail, for placement of the GPS monitoring device on his person, for his detention in his own home (as further described in ¶¶24-25) or for continuous monitoring of his location through the GPS device.

22. The GPS device is a cylinder approximately 3 inches tall and two inches wide that is attached to Mr. Belleau's right leg by a black neoprene rubber strap that is wrapped around his ankle. Although the device can be worn under the pants leg, it is sometimes directly visible to members of the public, such as when Mr. Belleau is seated or reaches upward or bends over, and it generally causes a visible bulge of the pants leg at the ankle. Mr. Belleau does not wear shorts in public, because the device will be plainly visible if he does. Several residents

have indicated to Mr. Belleau that they have noticed the monitor and know that he is a sex offender. At least one of these persons has warned him to stay away and others no longer speak to him.

23. DOC prohibits Mr. Belleau from removing the GPS device at any time. It rubs against and causes discomfort and occasional blistering on the skin and interferes with certain activities of daily living, such as bathing and dressing. The device gets dirty and is difficult to clean.

24. The GPS device's batteries must be charged for approximately one hour in each 24-hour period. In order to charge the batteries, Mr. Belleau must plug a charging cord into the device and the cord into an electrical outlet. The device remains on Mr. Belleau's ankle during charging, so he cannot move more than a few feet from the outlet. The charging process thus severely restricts Mr. Belleau's movements for at least an hour every day of the year.

25. The GPS device's batteries have malfunctioned on occasion, requiring DOC-hired technicians to come to Mr. Belleau's home to replace or repair the batteries. Mr. Belleau must remain at his home to await their arrival and submit to their attachment of a new or repaired device. The repairs have taken up to about an hour to complete.

26. Staff members from the DOC monitoring center also periodically make random, unannounced home visits. Local police in marked squad cars have accompanied DOC staff on these visits to Mr. Belleau's home, stationed themselves outside his door, calling the neighborhood's attention to Mr. Belleau's home.

27. For each person subject to GPS tracking, the statute requires DOC to create "exclusion zones" and "inclusion zones" "if necessary to protect public safety." Wis. Stat. § 301.48(3)(c). Exclusion zones are geographical zones near "areas where children congregate" in which a person subject to GPS tracking may not enter except to travel through to another destination. Wis. Stat. § 301.48(1)(a). An "inclusion zone" is an area from which a person subject to GPS monitoring is forbidden to leave. Wis. Stat. § 301.48(1)(c).

28. Defendants have currently created a 200 foot "inclusion" zone surrounding Mr. Belleau's home, apparently for the purpose of alerting DOC that he has left home, even though DOC does not currently prohibit him from leaving his home (except as noted in ¶¶24-25).

29. DOC may at any time prohibit Mr. Belleau from leaving any specified area and/or from entering any specified area or areas, other than to travel through to another destination. The GPS monitoring law does not provide a person subject to its requirements with notice or an opportunity to be heard on whether inclusion or exclusion zones are "necessary to protect public safety."

30. The GPS monitoring system immediately alerts DOC and local law enforcement if a person subject to monitoring remains in an exclusion zone "for any longer period than the time needed to travel through the zone to get to another destination" or leaves an inclusion zone without authorization. Wis. Stat. § 301.48(3)(a)3. The statute is silent as to how the time needed to travel through the zone is determined.

31. Although most sex offenders subject to GPS monitoring may petition pursuant to Wis. Stat. § 301.48(6) to terminate lifetime GPS tracking after 20 years, a person, such as Mr. Belleau, who is subject to lifetime tracking under Wis. Stat. § 301.48(2)(b), may not file a petition requesting termination. Wis. Stat. § 301.48(6)(b)3.

32. Wis. Stat. § 301.48(4) authorizes the DOC to assess and collect all or part of the cost of GPS tracking from the person subject to such tracking. Wis. Adm. Code § DOC 332.20 requires persons subject to GPS tracking to pay a fee toward the cost of tracking.

33. The amount of the fee is supposed to vary based on gross monthly income. Wis. Adm. Code § DOC 332.20(3)(b). Despite the fact that Mr. Belleau's income was limited to a Social Security check, he was notified in September 2011 that he would have to pay $240 per month. Based on Mr. Belleau's income, his tracking fee has subsequently been determined to be $50 per month. If a person, such as Mr. Belleau, who is subject to GPS monitoring but is not also on probation, parole or extended supervision fails to pay the fee, the DOC may seek to collect the fee, without an administrative or judicial hearing, through wage assignment, a contracted collection agency, intercepting any Wisconsin tax refund or lottery winnings and/or "any other appropriate means." Wis. Adm. Code, § DOC 332.20(5).

## CLAIMS

### Count I: Article 1, Section 10 of the United States Constitution

## Lifetime Imposition of GPS Monitoring on Mr. Belleau
## Violates the Ex Post Facto Clause

34. Article 1, Section 10 of the United States Constitution provides, in relevant part, that "No State shall . . . pass any . . . ex post facto Law."

35. The Ex Post Facto Clause prohibits the States from imposing a different and greater punishment upon a person for a criminal act than was associated with the act at the time the person committed it.

36. Only persons who are charged with or have committed crimes are required to submit to wearing a device on their bodies against their will, kept under constant surveillance, restricted from leaving or remaining in certain places and required to pay the State for such monitoring. Moreover, the plainly punitive requirements of the same enactment that certain offenders be labeled "in red letters" and that the judges that released them from custody be identified on the internet illustrate the punitive intent of the legislation. Accordingly, it can be inferred that the legislature intended the GPS monitoring law to be punitive.

37. The GPS monitoring law imposes severe affirmative disabilities and restraints that promote the traditional aims of punishment, resemble traditional forms of punishment, are not rationally connected to any purported non-punitive purpose and are excessive in relation to such a non-punitive purpose. Accordingly, the GPS monitoring law has a punitive effect.

38. The GPS monitoring law requires Mr. Belleau to pay money to the DOC for as long as he remains on GPS monitoring. Mr. Belleau receives no benefit in

exchange for this payment. The requirement to make this payment is a direct consequence of his prior conviction for a sexual offense.

39. The GPS monitoring law imposes greater punishment upon Mr. Belleau than existed under the law at the time he committed his sex offenses in the late 1980s and therefore violates the Ex Post Facto clause as applied to him.

### Count II: Fourth Amendment to the United States Constitution
### Involuntary GPS Tracking Without a Warrant or Probable Cause
### Constitutes an Unreasonable Search and Seizure

40. The Fourth Amendment to the United States Constitution, applicable against the States through the Fourteenth Amendment, provides that "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ."

41. Just as a "search" within the meaning of the Fourth Amendment occurs when the government obtains location information by physically intruding upon an individual's "effects," such as a car, so a "search" occurs when the government obtains such information by physically intruding upon an individual's "person." A Fourth Amendment search also occurs when the government invades an individual's "reasonable expectations of privacy."

42. A "seizure" occurs when a person is arrested or otherwise detained, within the meaning of the Fourth Amendment.

43. The Defendants have compelled a substantial, continuing physical intrusion upon Mr. Belleau by requiring him to wear a GPS device on his person for the

11

purpose of monitoring his physical location. Mr. Belleau has a reasonable expectation that the government will not be privy to his location at all times.

44. In general, to be "reasonable" a search or seizure of a person requires a warrant based upon timely information that establishes probable cause.

45. Because the Defendants did not obtain a warrant and did not have probable cause to believe Mr. Belleau had recently committed or was about to commit a crime at the time they compelled him to wear a GPS monitoring device that transmits location information to the DOC, the Defendants have presumptively engaged in a continuing "unreasonable" search and daily and periodic seizure, in violation of the Fourth Amendment.

46. The circumstances under which Defendants have compelled Mr. Belleau to submit to the continuing search and seizures do not fall within a recognized exception to the requirements of a warrant and probable cause. Moreover, as a person who has been absolutely released from his criminal sentence, Mr. Belleau's expectations of privacy are not diminished as a result of ongoing involvement in the criminal justice system, and the government does not have sufficiently exceptional interests, apart from the general interest in crime control, to justify overriding Mr. Belleau's privacy expectations.

47. Because the continuing search and seizures in this case do not fall within the limited and exceptional circumstances justifying a departure from the Fourth Amendment's warrant and probable cause requirements, they violate Mr. Belleau's Fourth Amendment right to be free of unreasonable search and seizure.

12

**Count III: Fourteenth Amendment to the United States Constitution
Exclusion of Persons Discharged from Confinement under Ch. 980
From Ability to Petition for Termination of Monitoring
Violates the Equal Protection Clause**

48. The Fourteenth Amendment to the United States Constitution provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

49. The Equal Protection Clause of the Fourteenth Amendment prohibits the states from treating similarly situated persons differently.

50. The majority of sex offenders subject to lifetime GPS monitoring may, after 20 years of tracking without a criminal conviction, petition a court for termination of monitoring. Wis. Stat. §§ 301.48(6)(a) & 301.48(6)(b)1 & 2. If the court, after considering a physician's or psychologist's examination and report on whether the person is a danger to the public and any report from DOC on the need for continued monitoring and holding a hearing, determines that lifetime tracking is no longer necessary to protect the public, it may grant the petition terminating tracking. Wis. Stat. §§ 301.48(6)(d) – (h).

51. Wis. Stat. § 301.48(6)(b)3 prohibits persons, such as Mr. Belleau, who are placed on GPS monitoring as a result of discharge from confinement under Ch. 980, from petitioning for termination of monitoring.

52. There is no rational basis for depriving some sex offenders, such as Mr. Belleau, of opportunity to terminate monitoring by demonstrating that lifetime GPS

13

tracking is no longer necessary to protect the public, while allowing other sex offenders to do so.

### Count IV: Fourteenth Amendment to the United States Constitution
### Imposition of Inclusion and Exclusion Zones
### Without Notice or Opportunity to be Heard
### Violates Right to Procedural Due Process

53. The Fourteenth Amendment provides that "No State shall . . . deprive any person of life, liberty, or property, without due process of law."

54. The procedural component of the due process clause requires the government to provide notice and an opportunity to be heard at a meaningful time and in a meaningful manner when it restricts or impairs fundamental liberty interests.

55. Mr. Belleau enjoys a liberty interest in travel protected by the United States Constitution and Art. 1, § 4 of the Wisconsin Constitution.

56. The Defendants may at any time impose an inclusion zone that prevents Mr. Belleau from leaving specified areas and exclusion zones that prevent him from entering specified areas (other than to pass through to another destination), and thus significantly impaired his liberty interest in travel.

57. The Department may create and impose these inclusion and exclusion zones by considering certain factors and evidence to make a factual determination that the zones are "necessary to protect public safety."  Wis. Stat. § 301.48(3)(c).

58. The statutes do not require that Mr. Belleau be given notice and an opportunity to be heard with regard to the evidence and factors considered by the Defendants

14

in creating and imposing inclusion and exclusion zones, in violation of the Fourteenth Amendment's guarantee of due process.

WHEREFORE Plaintiff respectfully requests that this Court provide the following relief:

(a)     Declare that the Defendants' enforcement of Wis. Stat. § 301.48 violates the Plaintiff's rights under the Ex Post Facto Clause of Art. 1, Section 10, the Fourth Amendment and the Fourteenth Amendments to the United States Constitution;

(b)     Enjoin the Defendants from enforcing Wis. Stat. § 301.48 against Plaintiff;

(c)     Award Plaintiff's costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

(d)     Grant such other relief as this Court deems just and proper.

Dated this 9th day of October, 2013.

By:     /s Laurence J. Dupuis
        Laurence J. Dupuis
        State Bar No. 1029261
        ACLU of Wisconsin Foundation
        207 East Buffalo St., #325
        Milwaukee, WI 53202-5712
        (414) 272-4032
        ldupuis@aclu-wi.org

        James A. Walrath
        State Bar No: 1012151
        Law Offices of James A. Walrath, LLC.
        324 E. Wisconsin Ave., #1410
        Milwaukee, WI 53202
        Telephone: (414) 202-2300
        Email: jw@jaw-law.com

        Attorneys for Plaintiff Michael J. Belleau

15