IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

MICHAEL J. BELLEAU,

    Plaintiff,

v.                                                 Case No. 12-cv-1198

EDWARD F. WALL and
DENISE SYMDON,

    Defendants.

## JOINT STIPULATIONS

### DOC'S MONITORING CENTER AND MAXIMUM DISCHARGE REGISTRANTS

1.    Plaintiff Belleau fits the definition of a "maximum discharge" registrant subject to GPS monitoring.

2.    Employees in DOC's GPS Monitoring Center ("Center") monitor a total of approximately 926 people subject to GPS monitoring, including maximum discharge persons (approximately 192).

3.    Maximum discharge registrants, like Belleau, have their locations tracked and recorded in real time, but their current locations are not monitored in real time, other than when real time alerts are received for tampering, a low battery, when the registrant leaves the State, or in those limited instances where a maximum discharge registrant has an exclusion zone and enters and remains in that zone. Typically, the Center monitors maximum discharge registrants retroactively every 24 hours. This is done at

night, where a DOC employee ("Operator") assigned a set of maximum discharge registrants views a Bing computer map using Total Access software, which displays points showing the locations and movements of a particular person over the last 24 hours.

4. Generally, the Operator views an overview, which consists of a static map showing all points for a particular offender in a map area for the previous 24 hour time period. But the time period is adjustable (showing all points for 10 hours, 5 hours, etc.) and the Operator can zoom in and out to any location on the map. If the Operator believes there is a reason to explore a person's movements further, portions of the previous 24 hours are viewed in a moving format, where the location points move across the map.

5. A location point is recorded by the GPS technology every minute, so there are no extended periods (e.g., hours or days) when an offender's location cannot be ascertained.

6. Approximately 18 people work night shifts for the Center, which is when the retrospective viewing of maximum discharge registrants' movements occurs. The Operators have staggered shifts, and in any given night the Center has between 5 and 9 Operators reviewing maximum discharge maps.

7. Maximum discharge registrants do not, as a default, have "exclusion zones."  Mr. Belleau currently does not have any exclusion zones and thus is not prohibited from being in any particular locations.

8.     A maximum discharge registrant, such as Mr. Belleau, may be given an "exclusion zone" if a victim requests one. In such cases, the GPS Specialist will determine if the victim's request is reasonable. If an exclusion zone is imposed, and if a maximum discharge registrant enters an exclusion zone, a real-time alert is generated in the Center. There are no written criteria specified in DOC Administrative Directive #13-08, or elsewhere, for the GPS Specialist to apply in determining whether the victim's request for an exclusion zone is "reasonable."

9.     DOC Administrative Directive #13-08 also states: "Exclusion zones may also be imposed if deemed appropriate by the GPS Specialist and approved by the Sex Offender Programs Director, i.e. school zones, parks, daycares, etc." This applies to maximum discharge registrants.

10.    Currently, there are nine total maximum discharge registrants with exclusion zones. Eight maximum discharge registrants have exclusion zones established at the request of victims. One additional maximum discharge registrant has an exclusion zone imposed per the authority of the Sex Offender Programs Director, which was imposed for public safety reasons that were communicated to DOC by law enforcement. The exclusion zone for that registrant is a park and a daycare directly across from the park.

11.    If the maximum discharge registrant remains in an exclusion zone (i.e., the points do not indicate that the registrant is simply passing through), then the Operator will contact the GPS Specialist to notify him or

her of this alert, or may contact law enforcement if the Specialist cannot be reached.

12. DOC has no direct authority over the maximum discharge registrant in that instance, meaning it cannot take the registrant into custody or order that the registrant be taken into custody solely because of the entry into an exclusion zone. The Specialist or law enforcement may contact the victim or the maximum discharge registrant in person or by telephone.

13. Maximum discharge registrants will also generate a real-time alert if the unit has a dead or low battery, if the unit detects possible tampering, or if the registrant leaves the State. A tamper alert may result in a direct call from the Monitoring Center to local police or in a referral to the GPS Specialist, who may contact the registrant or local police to do a check on the registrant or the victim.

14. The raw data that can be used to generate maps showing locations is kept on a server that is housed at a private vendor (BI) contracted by DOC. The data is stored indefinitely, meaning there is data since the GPS law went into effect on June 6, 2006, per 2005 Wisconsin Act 431. If certain criteria are used (such as a certain date, offender name, and a time period) the data can be used to generate a map showing locations of the registrant at any time in the past when the offender was on GPS tracking. These maps, like the maps generated each night for maximum discharge registrants, allow

the Operator to zoom in and out and identify the offender's location, speed, bearing and surrounding landmarks for the time in question.

15. Current practice is for Operators to fill out spreadsheets nightly when viewing a registrant's retroactive location data on maps. Those spreadsheets have the following columns: one titled "Client" listing maximum discharge registrants; one titled "Tracking Data Last 24 Hours Y/N," where the operator indicates Yes or No for each "Client;" one titled "Violations/Concerns," which may be left blank, may state "None," or may briefly state a concern, such as "no points in home zone" or "many points in grade school property;" and a final column where the relevant Operator's name or initials are provided.

16. The following are examples of the types of concerns that Operators have listed in the "Violations/Concerns" column since 2010: when the tracker sends an alert for tampering or low battery or other malfunctions; other possible technical problems with data from the GPS device (lack of data points, lost signals from the device, etc.); when a registrant has gone in or near a park, a playground, a school, a daycare, a hospital or clinic, a public library, a sports venue (including Miller Park, the Bradley Center and Lambeau Field), a movie theater, a golf course, a department store, a pharmacy, a bar or restaurant, a church or a shopping mall; when a registrant leaves the state or municipality; or when a registrant does not spend any time or does not spend the night in the registrant's designated

"home zone." Operators have also noted when registrants were in hospitals or nursing homes and when registrants have died.

17. The following are examples of entries Operators have made specifically for Mr. Belleau since 2010: when he "stayed home all day," when he was on a street with a school or a church, when he was across the street from an elementary school, when he was in a city park, when he was in a "wooded area," when he was at a public library, when he was at a storage facility, when he did not have location points in his home zone for the period, and when he was near a health center that had what may have been playground equipment nearby.

18. These spreadsheets created by Operators are viewed by the GPS Specialist the next business day. The Specialist may follow up with the local Sex Offender Registry Specialists or law enforcement to alert them of concerns, if that has not already occurred.

19. Other law enforcement use of GPS Monitoring Center data may occur when law enforcement officers are engaged in criminal investigations and request location data about people who are subject to lifetime GPS tracking. Law enforcement officers periodically request GPS location data specific to the time and location of a criminal offense to determine whether there is a possible connection between the offense and a person subject to GPS tracking.

20. The maps showing locations are produced on Bing electronic maps, which show addresses, street names, and the identity of some

buildings and other landmarks. The Bing maps may be viewed in road or satellite modes. Operators may zoom in and out to view an offender's location and surroundings at a particular time. Bing may also have street view available in some communities for purposes of identifying the surroundings of a point on a map. Otherwise, Operators may use Google to learn if a monitored person's location point shows that the person is stationed in a place of potential note, such as a school. Such instances may be noted on the nightly spreadsheet.

21. The maximum discharge registrants also have a "home zone" that is displayed on the Bing map via the Total Access software. Operators at times may note on the spreadsheet if a monitored person is not in the "home zone" for an extended period of time. There are no written criteria specified in DOC Administrative Directive #13-08, or elsewhere, for determining what period of time is considered "extended."

22. A particular location point can be clicked by an operator, and the map will display the registrant's name; the date and time; the registrant's latitude and longitude; his or her speed; and his or her bearing (i.e., the direction in which he or she is moving). Clicking a link in this mode will give the Operator the street address nearest to the selected point.

23. Examples of maps generated with the data from Belleau's device using the Center's Total Access software are attached as Exhibits A-D. Exhibit A shows points in Belleau's "home zone" for 1/5/15. Exhibit B shows a wider view of Belleau's points for that same date, and also shows what

information is available if a particular location point is clicked. Exhibit C shows the widest view of points for that same date. Exhibit D shows the closest view of points in Belleau's home zone for 2/10/15.

24. Individuals currently on supervision (e.g., parole, extended supervision, and supervised release) and subject to GPS monitoring have their locations tracked and recorded in real-time, as do maximum discharge registrants, but are also subject to a greater number and variety of real-time alerts that will trigger direct monitoring by Operators in real time. The software will generate real-time alerts based on the restrictions placed on the offender, including alerts showing violations of exclusion and inclusion zones, schedule violations, tampers and other equipment issues such as low or dead batteries. In general, Operators do not continuously view any supervised individual's whereabouts, but rather respond to real-time alerts for monitoring. In general, Operators do not do a daily retrospective review of the locations of offenders on supervision and subject to GPS, as they do for maximum discharge registrants on lifetime GPS tracking.

25. The monitoring bracelets cannot pick up or transmit sounds to DOC from the offender or his surroundings, but the Center can transmit audio messages, which consist of a set of prerecorded announcements or warnings created by the manufacturer with audible commands such as "call your officer now," "low battery, recharge unit," "please pay your fees immediately," "report to the office immediately" and "remember your appointment."

## BACKGROUND FACTS

26. Plaintiff Belleau is subject to DOC lifetime global positioning system tracking pursuant to Wis. Stat. § 301.48 and is supposed to pay the Wisconsin Department of Corrections (DOC) a monthly monitoring fee.

27. Plaintiff Belleau is an adult resident of Wisconsin. Defendant Edward F. Wall is the Secretary of the Wisconsin Department of Corrections, which is responsible for the monitoring and tracking of persons subject to Wis. Stat. § 301.48. He is sued in his official capacity. Defendant Denise Symdon is the Administrator of the Division of Community Corrections within the Wisconsin Department of Corrections. The Division of Community Corrections monitors and tracks persons on probation, parole and extended supervision, as well as persons placed on GPS monitoring pursuant to Wis. Stat. § 301.48, through the DCC Monitoring Center. Ms. Symdon is sued in her official capacity.

28. In 2003, the State of Wisconsin filed a petition in Brown County Circuit Court seeking to have Belleau committed as a "sexually violent person" under Wis. Stat. § 980.02. The petition was granted on September 15, 2004, and Mr. Belleau was committed to the Sand Ridge Secure Treatment Center, operated by the Wisconsin Department of Health Services.

29. In 2006, one year after he was completely discharged from his criminal sentence, Wisconsin enacted 2005 Wis. Act 431, which created the GPS monitoring and tracking law, codified at Wis. Stat. § 301.48.

30. The GPS tracking and monitoring law establishes a "continuing global positioning tracking system to electronically monitor the whereabouts of persons who are subject" to the law. Wis. Stat. § 301.48(3)(a).

31. Pursuant to Wis. Stat. § 301.48(2)(b)2, a person who is discharged by a court under Wis. Stat. § 980.09(4) is subject to lifetime GPS monitoring, unless the discharge was immediately preceded by a period of supervised release, in which case the person would be subject to lifetime monitoring pursuant to Wis. Stat. § 301.48(2)(b)1.

32. On or about July 2, 2010, the State stipulated to Mr. Belleau's discharge and the Brown County Circuit Court issued an order for plaintiff's discharge from Ch. 980 status.

33. On July 7, 2010, a GPS monitoring and tracking device was attached to Mr. Belleau's ankle, which he is required to wear 24 hours a day for the remainder of his life, pursuant to Wis. Stat. § 301.48.

34. At no time did Defendants or the State of Wisconsin make a probable cause determination or obtain a warrant or other court order based upon probable cause for placement of the GPS monitoring device on Belleau's person or for continuous monitoring of his location through the GPS device.

35. The GPS device is a cylinder with the dimensions 2.5 x 3.5 x 1.5 inches and is attached to an individual's leg by a black neoprene rubber strap that is wrapped around his ankle. The device can be attached to the wrist if medical issues so require.

36. The GPS device's batteries must be charged for approximately one hour in each 24-hour period. In order to charge the batteries, Mr. Belleau must plug a charging cord into the device and into an electrical outlet, and the device remains on his ankle during charging.

37. DOC-hired technicians have gone to Mr. Belleau's home to repair or replace the batteries. Mr. Belleau must wait for the arrival of the technician and the repairs can take up to an hour.

38. Wis. Stat. § 301.48(6) allows certain sex offenders subject to GPS monitoring to petition to terminate lifetime GPS tracking after 20 years. Mr. Belleau is subject to lifetime tracking under Wis. Stat. § 301.48(2)(b), but he is not eligible to petition to request termination pursuant to Wis. Stat. § 301.48(6)(b)3.

39. DOC has authority to impose a GPS monitoring fee based on ability to pay and tracking costs. In September 2011 plaintiff's fee for GPS monitoring was set at $50 per month based on his income. Mr. Belleau has not paid any GPS fees.

40. The initial application of Wis. Stat. § 301.48 does not depend on ongoing evaluations of a monitored individual's threat to public safety, but rather treats offenders as a class.

41. Mr. Belleau's most recent assessment by a psychologist employed by the Sand Ridge Secure Treatment Center determined that he was not "more likely than not" to commit a sexually violent act and thus he did not qualify as a "sexually violent person" under Wisconsin Chapter 980.

42. The State of Wisconsin, by Assistant District Attorney Kevin C. Greene, stipulated in *State v. Belleau*, Brown County Case Number 2003CI002 that: (1) it could not meet its burden to demonstrate that Michael Belleau was a sexually violent person under Wisconsin Statute § 980.09, and (2) supervised release was inapplicable under Wisconsin Statute § 980.08.

Dated this 16th day of February, 2015.

                                      BRAD D. SCHIMEL
                                      Attorney General


                                      /s/ Anthony D. Russomanno
                                      ANTHONY D. RUSSOMANNO
                                      Assistant Attorney General
                                      State Bar #1076050

                                      ABIGAIL C. S. POTTS
                                      Assistant Attorney General
                                      State Bar #1060762

                                      Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-2238 (Russomanno)
(608) 267-7292 (Potts)
(608) 267-2223 (Fax)
russomannoad@doj.state.wi.us
pottsac@doj.state.wi.us

/s/ Laurence J. Dupuis
                                                            Laurence J. Dupuis
                                                            State Bar # 1029261

AMERICAN CIVIL LIBERTIES UNION
OF WISCONSIN FOUNDATION, INC.
207 East Buffalo Street, Suite 325
Milwaukee, WI 53202-5712
(414) 272-4032, ext. 12
(414) 272-0182 facsimile
Email: ldupuis@aclu-wi.org



                                                            /s/ James A. Walrath
                                                            James A. Walrath
                                                            State Bar # 1012151

LAW OFFICES OF JAMES A. WALRATH, LLC.
324 E. Wisconsin Ave., #1410
Milwaukee, WI 53202
(414) 202-2300
Email: jw@jaw-law.com