UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

**MICHAEL J. BELLEAU,**

    Plaintiff,

vs.                                                Case No. 12-cv-1198 (WCG)

**EDWARD F. WALL, in his
official capacity as Secretary of the
Wisconsin Department of Corrections,
and DENISE SYMDON, in her
official capacity as the Administrator of
the Division of Community Corrections,**

    Defendants.

**PLAINTIFF MICHAEL BELLEAU'S STATEMENT OF
PROPOSED MATERIAL FACTS
IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Civil L.R. 56(b)(1)(C), the Plaintiff, Michael Belleau, by his undersigned attorneys, submits the following proposed statement of material facts as to which there is no genuine issue:

1. The Plaintiff, Michael J. Belleau, is seventy-two years old. (Belleau Decl. ¶ 2.)

2. Mr. Belleau was charged in 1991 and convicted in January 1992 of second degree sexual assault of a child for conduct occurring in 1987, and was placed on probation. He was discharged from his sentence by DOC on January 10, 1997. In 1994, he was charged with and convicted of first degree sexual assault of a child for conduct occurring in 1988 and 1989. He was sentenced to ten years in state prison for the 1994 conviction, but was paroled in 2000. His parole was revoked in October 2001. He was discharged from his

1

sentence on January 3, 2005. (Amend. Compl. [Doc. #34] (hereafter "Compl.") ¶ 10 & Answer to Amend Compl. [Doc. #38] (hereafter "Answer") ¶ 6.)

3. An email to Legislative Reference Bureau staff regarding the bill that became 2005 Wis. Act 431 from an aide to Rep. Suder, a lead sponsor of the bill, dated Oct. 12, 2005, instructs that the bill be amended to "[m]ake sure that GPS is ordered at the time of criminal sentencing rather than the civil sentencing, to eliminate the constitutionality concerns." Dupuis Decl. Ex. E (LRBs0194 Drafting File (10/25/2005). On November 7, 2005, a legislative attorney in the LRB warned legislative staffers that "the GPS requirements contained in this substitute amendment may be unconstitutional. Arguably, they increase the penalty for offenders who have already been sentenced, in violation of the constitutional prohibition on ex post facto laws." Dupuis Decl. Ex. D (Drafters Note, LRBs0272/1dn (Nov. 7, 2005); *see also* Dupuis Decl. Ex. E (Email from Michael Dsida to Luke Hilgemann (Oct. 13, 2005), in Drafting File LRBs0194 (10/25/2005)) ("[R]equiring lifetime GPS supervision for someone who is currently in prison (or who is out of prison but subject to ch. 980) arguably violates the constitutional prohibition on ex post fact laws (under which a penalty cannot be increased retroactively). You can certainly argue that GPS monitoring is comparable to sex offender registration requirements, which can be imposed retroactively. But registration does not involve monitoring, nor does it require the person to wear a bracelet or something similar.").) The sponsor responded to these concerns by stating: "As far as the constitutionality of lifetime for offenders who are already in prison, we have already discussed this scenario and would like to move forward with the bill as it is written." Dupuis Decl. Ex. E (Email

from Luke Hilgemann to Michael Dsida (copied to Rep. Suder) (Oct. 13, 2005), in Drafting File LRBs0194 (10/25/2005).)

4. The initial version of the bill that ultimately became Act 431 would have imposed GPS tracking by the Department of Corrections of individuals on probation, parole or extended supervision and by the Department of Health and Family Services of sexually violent persons on supervised release under Ch. 980, and the duration of tracking would have been limited to the time of probation, parole or supervision. 2005 AB 591, LRB-2637/1. (Dupuis Decl. Ex. C.) A lead sponsor of the legislation, Rep. Scott Suder, stated he "would like this bill to apply to all sex offenders regardless of where they are in the process. i.e., those already on parole, probation, or extended supervision and those beginning those processes," but initially did not request that the tracking last for the offender's lifetime. Dupuis Decl. Ex. F (Email from Luke Hilgemann to Cathlene Hanaman (May 2, 2005), in LRB-2637 Drafting File (7/25/2005).)

5. The definition of "GPS tracking" was amended to include a provision allowing for use of "comparable technology" for tracking. Wis. Stat. § 301.48(1)(b). A Legislative Reference Bureau note of a conversation with "Luke" (presumably Luke Hilgemann in Rep. Suder's office) about changes requested by "Suder & Kleefish" reveals that t(he "or comparable technology" language was inserted "to allow for implantation." Dupuis Decl. Ex. E (LRB Notes (undated), in Drafting File LRBs0194 (10/25/2005)).

6. Although as originally proposed, DHFS would have been responsible for the monitoring of people who were subject to Ch. 980 detention or supervised release, the final legislation assigned responsibility for monitoring all sex offenders on GPS to the Department of Corrections. This was a conscious choice, as reflected in an email from an

aide to Rep. Suder to LRB, which states, "We would like DOC to have responsibility for monitoring them [people on 'conditional release' under Ch. 980] from the start." Dupuis Decl. Ex. E (Email from Hilgemann to Dsida (Oct. 13, 2005), in Drafting File LRBs0194 (Oct. 25, 2005).)

7. Section 6 of Act 431 required DOC to include on the State's internet sex offender registry "a notice, written in red letters" if the registrant is a "sexually violent person" (codified at Wis. Stat. §301.46(5)(bm)1) and to identify the "name and court of the judge who authorized supervised release or discharge for the person." (Codified at Wis. Stat. §301.46(5)(bm)8.) (Compl. ¶ 13 & Answer ¶ 9.)

8. GPS tracking cannot prevent a person who is being tracked from committing a crime and legislators were aware of this fact when adopting Act 431. Emails from the CEO of a tracking technology company to legislative aides disclaimed the ability to prevent a sex crime from occurring: "It is important that the public does not perceive this as a tool that will stop a crime from occurring." Dupuis Decl. Ex. E (Email from Tom Wharton to Luke Hilgermann (Sept. 14, 2005), in Drafting File LRBs0194 (10/25/2005).) Instead, GPS tracking provides the ability "to use GPS tracking data, or other non compliance date [sic] like tampering that would implicate them in a crime." *Id.*. GPS tracking operates just like any other as any other criminal investigation technique: it makes possible detection and prosecution of already completed crimes. *Id.* ("It is important to reiterate that the perception of an offender being watched, (IE that he will be found out of [sic] he does something wrong) is in itself what reduces the rate of reoffence.").

9. In February 2009 and again in February 2010, Richard Elwood, Ph.D., a psychologist employed by the Sand Ridge Secure Treatment Center, using a combination of actuarial

4

and other risk assessment methods, determined that Mr. Belleau was not more likely than not to commit a sexually violent act if released and thus concluded that Mr. Belleau did not qualify as a "sexually violent person" subject to civil commitment under Ch. 980 of the Wisconsin Statutes. (Dupuis Decl. Ex. A (Defs.' Resp. to Req. to Admit # 4); Dupuis Decl. Ex. K (Elwood Dep. at 138 (2009 evaluation resulted in finding not more likely than not to commit a sex offense if released)).

10. Dr. Elwood, who was designated an expert witness by the Defendants in this case (Dupuis Decl. Ex. K (Elwood Dep. at 12-14, 22-23), and who has done more than 250 sex-offender risk evaluations Dupuis Decl. Ex. K (Elwood Dep. at 110-111), holds the professional opinion that Mr. Belleau did not meet the criteria for civil commitment under Ch. 980, even at the time of his commitment in 2004. (Dupuis Decl. Ex. K (Elwood Dep. at 179)).

11. At the time of Dr. Elwood's evaluations in 2009 and 2010, Mr. Belleau's actuarial risk score of zero was "exceptionally low" and placed him among the two or so lowest risk offenders he had ever evaluated. (Dupuis Decl. Ex. K (Elwood Dep. at 114 (Belleau's actuarial score was zero); *id.* at 120-121 ("I don't recall ever having more than two Static-99R scores at zero."))).

12. Dr. Elwood testified that research demonstrates that an offender's risk of reoffending continues to decline with age and with years in the community without offending, so that Mr. Belleau likely currently poses about half of the "exceptionally low" risk of reoffense he posed when he was released in 2010. (Dupuis Decl. Ex. K (Elwood Dep. at 124).)

13. Dr. Elwood testified that none of the individuals who have been released from Ch. 980 confinement based on his opinion that the person was not a sexually violent person have

5

been arrested for or convicted of a subsequent sexual offense. (Dupuis Decl. Ex. K (Elwood Dep. 118-119).) And Mr. Belleau is, according to Dr. Elwood, "lower risk than the – even the average of those I recommended for discharge." (Dupuis Decl. Ex. K (Elwood Dep. at 121).)

14. As a result, in an order signed on July 2, 2010, but filed on July 6, 2010, the Brown County Circuit Court found insufficient grounds to believe Mr. Belleau is a sexually violent person, concluded that he did not meet the criteria for supervised release, and accordingly discharged Mr. Belleau from his commitment under Wis. Stat. § 980.09(4). Belleau Decl. Ex. A (Order in State v. Belleau, 2003CI002 (signed July 2, 2010, Filed July 6, 2010).) The discharge was made effective July 7, 2010, to allow the DOC "to arrange GPS monitoring, set-up and compliance." Belleau Decl. Ex. B (State's Stip. For Discharge in State v. Belleau, 2003CI002 (signed July 2, 2010, filed July 6, 2010)) ("Due to the timing of the Holiday weekend and the need to arrange GPS monitoring, set-up and compliance, the State asks that the Discharge be effective July 7, 2010.").

15. On July 7, 2010, at the Brown County jail, where he had been detained since July 2, 2010, so that DOC could begin GPS tracking, an agent of DOC attached a GPS monitoring and tracking device to Mr. Belleau's ankle. Jail staff released Mr. Belleau to the street before the GPS was installed, but while he was waiting for a bus, to DOC agents had him return to the waiting area of the jail to install the device. (Belleau Decl. ¶ 9). The device was installed by DOC probation and parole agents, including agent Fusfeld. (Dupuis Decl. Ex. L (Smith Dep. at 34-35).)

16. The device is known as an ExacuTrack One, provided to defendants by the vendor, BI Incorporated, with which the defendants contract for the tracking hardware and software

6

used to implement Wis. Stat. § 301.48. (Dupuis Decl. Ex. M (Larrabee Dep. at 50-51, 54); Dupuis Decl. Ex. N (LeFave Dep. at 39); Dupuis Decl. Ex. G (Dep. Ex. 8 (Fact Sheet)); Dupuis Decl. Ex. H (Dep. Ex. 16 (LFB Info Paper 56) at 28.)

17. Mr. Belleau did not consent to the attachment of the ExacuTrack One. (Belleau Decl. ¶ 10.) One DOC agent placed the device on his ankle and tightened it at the instruction of agent Robert Fusfeld, despite Mr. Belleau's objection, causing a blister on his left leg. (Belleau Decl. ¶ 9.)

18. At no time did Defendants or the State of Wisconsin obtain a warrant or other court order based upon probable cause for Mr. Belleau's detention at the jail, for placement of the GPS monitoring device on his person, for his periodic detention in his own home for charging or maintenance, or for continuous monitoring of his location through the GPS device. (Compl. ¶ 21 & Answer ¶ 17; Dupuis Decl. Ex. A (Resp. to Req. to Admit Nos. 6 & 7).)

19. BI Incorporated has republished an article on its website describing GPS monitoring as "Prison Without Walls." Dupuis Decl. Ex. I ("Prison Without Walls" printed 8/19/13).

20. Although the device can be worn under the pants leg, it is sometimes directly visible to members of the public, such as when Mr. Belleau is seated or reaches upward or bends over, and it generally causes a visible bulge of the pants leg at the ankle. Mr. Belleau does not wear shorts in public, because the device will be plainly visible if he does. (Belleau Decl. ¶ 14 & Ex. E.) Several residents have indicated to Mr. Belleau that they have noticed the monitor and know that he is a sex offender. At least one of these persons has warned him to stay away, brandishing a gun, and others no longer speak to him. (Belleau Decl. ¶ 15; see also Dupuis Decl. Ex. J (Dep. Ex. 13 (GPS Specialist log entry

for 8/19/2013 noting incident in which Mr. Belleau was "'confronted' verbally by someone – asking his restrictions".)) Complaints about embarrassment from wearing the GPS unit in public are commonplace. (Dupuis Decl. Ex. M (Larrabee Dep. at 84-85 (registrants complained about embarrassment from wearing GPS unit).) In one instance, Mr. Belleau was kneeling at his church to receive communion and a member of the congregation saw the GPS unit and asked Mr. Belleau about it. (Belleau Decl. ¶ 15.)

21. The GPS unit also emits audible messages when the batteries are low. (Belleau Decl. ¶ 16; Stip ¶ 25)

22. These messages, if received in public, could also identify the person wearing the GPS unit as a sex offender. Mr. Belleau has received such messages. (Belleau Decl. ¶ 16.)

23. DOC prohibits Mr. Belleau from tampering with or removing the GPS device. (Belleau Decl. ¶ 17 & Ex. C (Dep. Ex. 11 (notice informing offender of penalty for tampering with unit)).)

24. Inserting an object between the strap and ankle can trigger "tamper" alert. Dupuis Decl. Ex. M (Larrabee Dep. at 35-36); Dupuis Decl. Ex. J (Dep. Ex. 13 (4/19/2011 log entry: "Called Reg. Warned him NOT to put anything between his ankle and the bracelet as that would be considered tampering").)

25. Mr. Belleau has received visits from local police because of tamper alerts, even when he has not tampered with the device. (Belleau Decl. ¶ 17; Dupuis Decl. Ex. M (Larrabee Dep. at 88-89); Dupuis Decl. Ex. J (Dep. Ex. 13 (8/17/2010; 12/1/2013 log entries).)

26. The GPS device rubs against and causes discomfort and occasional blistering on the skin and interferes with certain activities of daily living, such as bathing and dressing. (Belleau Decl. ¶ 12; see also Dupuis Decl. Ex. M (Larrabee Dep. at 82). Mr. Belleau has

8

had particular problems when his lower legs swell, making the strap sweaty, tight and uncomfortable. (Belleau Decl. ¶ 13 & Ex. D & E.)

27. The GPS device remains on Mr. Belleau's ankle during battery charging, so he cannot move more than several feet from the outlet.  (Belleau Decl. ¶ 18 & Ex. F; Compl. ¶ 24 & Answer ¶ 20.)

28. The charging process thus severely restricts Mr. Belleau's movements for at least an hour each day. (Belleau Decl. ¶ 19-20.)  Since the GPS device was attached to his leg on July 7, 2010 through Feb. 11, 2015, Mr. Belleau has spent approximately 1680 hours – the equivalent of 70 days over the past 4 years and 7 months – charging his GPS device. Mr. Belleau only charges his device's battery at home, because to charge it in public would draw attention to and identify him as a criminal and sex offender. (Belleau Decl. ¶ 20.)

29. The GPS device's batteries have malfunctioned on occasion, requiring DOC-hired technicians to come to Mr. Belleau's home to replace or repair the batteries.  Mr. Belleau must remain at his home to await their arrival and submit to their attachment of a new or repaired device.  The repairs have taken up to an hour to complete.  (Compl. ¶ 25 & Answer ¶ 21). The GPS Specialist's records reflect several instances in which service was required at Mr. Belleau's home.  (Dupuis Decl. Ex. J (Dep. Ex. 13 (log entries for 4/19/2011; 6/6/2012; 7/23/2012).)

30.  In addition, Mr. Belleau is subject to Wisconsin's Sex Offender Registration and Notification program requirements.  (Dupuis Decl. Ex. L (Smith Dep. at 15 (Belleau already registered while at Sand Ridge).) This includes regular contact with DOC Registration Specialists, which is recorded in a DOC database. (Dupuis Decl. Ex. L (Smith Dep. at 12 (contacts with Mr. Belleau begin on release from Ch. 980); *id.* at 20-21

9

Case 1:12-cv-01198-WCG   Filed 02/16/15   Page 9 of 13   Document 69

(identifying other DOC Registration Specialists with responsibility for Mr. Belleau's registry compliance); *id.* at 13 (describing contact databases). The registration program requires Mr. Belleau to respond to frequent requests to update information on his location, employment, and other information. (Dupuis Decl. Ex. L (Smith Dep. at 30-31; *id.* at 56-57 (describing "plethora of letters" sent to Mr. Belleau by registration program).)

31. Sex Offender Registration Specialists from the DOC Sex Offender Registration Program make home visits. Local police and United States Marshalls in marked squad cars have accompanied DOC staff on these visits to Mr. Belleau's home, stationed themselves outside his door, calling the neighborhood's attention to Mr. Belleau's home. (Belleau Decl. ¶ 17, 22, 23; Dupuis Decl. Ex. L (Smith Dep. at 57-59).)

32. The GPS specialist may also notify the SORP staff of information derived from GPS tracking, which can result in further contacts between people like Mr. Belleau and DOC staff and/or local law enforcement. (Dupuis Decl. Ex. J (Dep. Ex. 13 (3/31/2011 entry re GPS points suggesting changed address).)

33. SORP staff may also request information to locate registrants, either retrospectively or in real time. (Dupuis Decl. Ex. L (Smith Dep. at 15-17).) Police, acting at the behest of SORP staff who believed Mr. Belleau was in violation of registration requirements because he was homeless and did not have a suitable residence, located Mr. Belleau at a motel with help of GPS monitoring center staff the day after he was released from custody in July 2010. (Dupuis Decl. Ex. L (Smith Dep. at 28, 32-33).) It is no longer considered unlawful to be homeless. (Dupuis Decl. Ex. L (Smith Dep. at 28 ("As it indicates there, he was currently homeless, and at that time, the statute indicates that

10

Case 1:12-cv-01198-WCG   Filed 02/16/15   Page 10 of 13   Document 69

(identifying other DOC Registration Specialists with responsibility for Mr. Belleau's registry compliance); *id.* at 13 (describing contact databases). The registration program requires Mr. Belleau to respond to frequent requests to update information on his location, employment, and other information. (Dupuis Decl. Ex. L (Smith Dep. at 30-31; *id.* at 56-57 (describing "plethora of letters" sent to Mr. Belleau by registration program).)

31. Sex Offender Registration Specialists from the DOC Sex Offender Registration Program make home visits. Local police and United States Marshalls in marked squad cars have accompanied DOC staff on these visits to Mr. Belleau's home, stationed themselves outside his door, calling the neighborhood's attention to Mr. Belleau's home. (Belleau Decl. ¶ 17, 22, 23; Dupuis Decl. Ex. L (Smith Dep. at 57-59).)

32. The GPS specialist may also notify the SORP staff of information derived from GPS tracking, which can result in further contacts between people like Mr. Belleau and DOC staff and/or local law enforcement. (Dupuis Decl. Ex. J (Dep. Ex. 13 (3/31/2011 entry re GPS points suggesting changed address).)

33. SORP staff may also request information to locate registrants, either retrospectively or in real time. (Dupuis Decl. Ex. L (Smith Dep. at 15-17).) Police, acting at the behest of SORP staff who believed Mr. Belleau was in violation of registration requirements because he was homeless and did not have a suitable residence, located Mr. Belleau at a motel with help of GPS monitoring center staff the day after he was released from custody in July 2010. (Dupuis Decl. Ex. L (Smith Dep. at 28, 32-33).) It is no longer considered unlawful to be homeless. (Dupuis Decl. Ex. L (Smith Dep. at 28 ("As it indicates there, he was currently homeless, and at that time, the statute indicates that

when a registrant leaves an institution or a security facility, they are to provide an address. . . That has changed.").)

34. For the sex offenders on GPS who are also subject to the supervision of probation and parole agents, the defendants' Monitoring Center staff generally only check an offender's location when they receive an "alert" that the offender has left an inclusion zone, entered an exclusion zone or there is a problem with the tracking unit. (Stipulation ¶¶ 2 & 24)

35. Mr. Belleau visits or has visited his church, his doctor, the homes of family members, the nursing home to be with a close female friend, and his lawyers in this case. He knows, however, that the DOC can ascertain his location at any time, currently or in the past since his release. (Belleau Decl. ¶ 24-26.)

36. Knowing that the government can tell he has visited such private places is disturbing to Mr. Belleau and sometimes deters him from going to such places. (Belleau Decl. ¶ 27.)

37. In addition to the routine, daily retrospective inspection of Mr. Belleau's location, the GPS specialist and Monitoring Center operators are able, at any time, to determine where Mr. Belleau is located. (Dupuis Decl. Ex. M (Larrabee Dep. at 87-88 (using Total Access program, DOC staff can locate person "right now").)

38. Real-time monitoring and reviews of an offender's locations in the past generally occurs in response to requests from law enforcement investigating a crime. (Dupuis Decl. Ex. L (Smith Dep. at 15-17).)

39. Although most sex offenders subject to GPS monitoring may petition pursuant to Wis. Stat. § 301.48(6) to terminate lifetime GPS tracking after 20 years, a person, such as Mr. Belleau, who is subject to lifetime tracking under Wis. Stat. § 301.48(2)(b), may not file a petition requesting termination, because he was released from Ch. 980 commitment.

11

Case 1:12-cv-01198-WCG    Filed 02/16/15    Page 11 of 13    Document 69

Wis. Stat. § 301.48(6)(b)3 (prohibiting offenders subject to lifetime GPS pursuant to Wis. Stat. § 301.48(2)(b) from petitioning to terminate lifetime tracking). Compl. ¶ 31 & Answer ¶ 27)

40. Mr. Belleau has not committed or attempted to commit a sex crime, has not been arrested for or charged with a sex crime, and has not been convicted of a sex crime since his discharge and release from Ch. 980 confinement on July 7, 2010. (Belleau Decl. ¶ 8.)

41. Despite the fact that Mr. Belleau's income was limited to a Social Security check, he was notified in September 2011 that he would have to pay a $240 per month GPS tracking fee. Based on Mr. Belleau's income, his tracking fee has subsequently been determined to be $50 per month. (Belleau Decl. ¶ 38 & Ex G .)

42. If a person, such as Mr. Belleau, who is subject to GPS monitoring but is not also on probation, parole or extended supervision fails to pay the fee, the DOC may seek to collect the fee, without an administrative or judicial hearing, through wage assignment, a contracted collection agency, intercepting any Wisconsin tax refund or lottery winnings and/or "any other appropriate means." Wis. Adm. Code, § DOC 332.20(5).

43. Before he was subjected to GPS tracking, Mr. Belleau had an expectation that the government would not be able to learn and record when he went to a place of worship, to see a doctor, to visit family members or close friends, to socialize with community groups, such as the American Legion, to consult with his lawyers, or to use a public library. (Belleau Decl. ¶ 29-34.)

Dated this 16th day of February, 2015.

/s Laurence J. Dupuis
Laurence J. Dupuis
State Bar No. 1029261
ACLU of Wisconsin Foundation

12

207 East Buffalo Street
Suite 325
Milwaukee, WI 53202-5712
Telephone: (414) 272-4032
Facsimile: (414) 272-0182
Email: ldupuis@aclu-wi.org

James A. Walrath
State Bar No: 1012151
Law Offices of James A. Walrath, LLC.
324 E. Wisconsin Ave., #1410
Milwaukee, WI 53202
Telephone: (414) 202-2300
Email: jw@jaw-law.com

Attorneys for Plaintiff Michael J. Belleau

13