**DUPUIS DECLARATION EXHIBIT E**

# 2005 DRAFTING REQUEST

## Assembly Substitute Amendment (ASA-AB591)

Received: 08/31/2005                           Received By: **chanaman**

Wanted: **As time permits**                    Identical to LRB:

For: **Scott Suder (608) 267-0280**            By/Representing: **Luke**

This file may be shown to any legislator: **NO**   Drafter: **chanaman**

May Contact:                                   Addl. Drafters:  **mdsida**

Subject:    Criminal Law - crimes agnst kids    Extra Copies:
            Criminal Law - sentencing
            Criminal Law - sex offenses

Submit via email: **YES**

Requester's email:     Rep.Suder@legis.state.wi.us

Carbon copy (CC:) to:  robin.ryan@legis.state.wi.us

**Pre Topic:**

No specific pre topic given

**Topic:**

Exclusion and inclusion zones, scope of tracking, costs of GPS tracking

**Instructions:**

See Attached

**Drafting History:**

| Vers. | Drafted | Reviewed | Typed | Proofed | Submitted | Jacketed | Required |
|---|---|---|---|---|---|---|---|
| /? | chanaman 09/09/2005 | kfollett 09/09/2005 | | | | | |
| /P1 | | | jfrantze 09/09/2005 | | lemery 09/09/2005 | | |
| /P2 | chanaman 09/12/2005 | lkunkel 09/12/2005 | pgreensl 09/12/2005 | | lnorthro 09/12/2005 | | |

| Vers. | Drafted | Reviewed | Typed | Proofed | Submitted | Jacketed | Required |
|---|---|---|---|---|---|---|---|
| /P3 | chanaman 10/09/2005 mdsida 10/24/2005 | lkunkel 10/25/2005 | | ———— ———— ———— ———— | | | |
| /1 | | | chaugen 10/25/2005 | ———— ———— | mbarman 10/25/2005 | mbarman 10/25/2005 | |

FE Sent For: .

Contact for sub: Luke    Suder / Klefish

Exclusion/inclusion zones – schools, parks, d-c centers, youth centers, other zones

"or comparable technology" -- to allow for implementation

offender must pay for unit

# Dsida, Michael

**From:** Hilgemann, Luke
**Sent:** Thursday, October 13, 2005 5:56 PM
**To:** Dsida, Michael
**Subject:** RE: One more change for AB 591

Mike,

We would like DOC to have responsibility for monitoring them from the start.

As for the petition provisions, are there any similar criteria in statute already? If not, come up with someone that you think would work for these instances and we will go from there.

Have a great night!

*Luke Hilgemann*
Luke Hilgemann
Office of Rep. Scott Suder
Wisconsin's 69th Assembly District
Room 21 North, State Capitol
888.534.0069 or 608.267.0280

---

**From:** Dsida, Michael
**Sent:** Thursday, October 13, 2005 5:04 PM
**To:** Hilgemann, Luke
**Subject:** RE: One more change for AB 591

Including all cases of second-degree child sexual assault would address the judge vs. jury issue.

Since the sub will now cover lifetime registrants, how do you want to handle people who are on conditional release? Should DHFS have responsibility for having them monitored until they are discharged, with DOC picking it up afterwards? (DOC would handle it after their discharge because the person would be a lifetime registrant under s. 301.45 (5) (b) (1m).) Or do you want DOC to have responsibility for it from start to finish?

I can draft some provisions that allow a person to petition to end his or her lifetime GPS monitoring, but are there any particular restrictions or criteria that you want to include? My main questions here relate to the timing and frequency of such petitions and whether the judge can deny the petition without a hearing.

---

**From:** Hilgemann, Luke
**Sent:** Thursday, October 13, 2005 4:06 PM
**To:** Dsida, Michael
**Cc:** Suder, Scott
**Subject:** RE: One more change for AB 591

Mike,

Would including all 2nd degree sex offenders under that requirement then remedy those concerns? As far as the constitutionality of lifetime for offenders who are already in prison, we have already discussed this scenario and would like to move forward with the bill as it is written. Other states such as Florida who have already implemented lifetime GPS requirements have imposed those sanctions against offenders who were already in the system and have not had any constitutionality challenges arise.

1

| | |
|---|---|
| Sent: | Thursday, October 13, 2005 12:24 PM |
| To: | Hilgemann, Luke |
| Subject: | RE: One more change for AB 591 |

Does that apply to 2nd degree sex offenses that did not involve the use or threat of force or violence?

| | |
|---|---|
| From: | Hilgemann, Luke |
| Sent: | Thursday, October 13, 2005 11:19 AM |
| To: | Dsida, Michael |
| Cc: | Emerson, Anne |
| Subject: | RE: One more change for AB 591 |

Good morning Mike,

One final change Scott would like to include is lifetime GPS monitoring for 1st and 2nd degree child sex offenders who are also required to be on the state's sex offender registry for their life. He would also like to include a way for the offenders who are required to wear the GPS for life under our bill the ability to petition the court for release from the GPS requirements.

I hope this will be the last of the changes! Sorry for the inconvenience.

Regards,

*Luke Hilgemann*

Luke Hilgemann
Office of Rep. Scott Suder
Wisconsin's 69th Assembly District
Room 21 North, State Capitol
888.534.0069 or 608.267.0280

### Dsida, Michael

| | |
|---|---|
| From: | Hilgemann, Luke |
| Sent: | Thursday, October 13, 2005 4:06 PM |
| To: | Dsida, Michael |
| Cc: | Suder, Scott |
| Subject: | RE: One more change for AB 591 |

Mike,

Would including all 2nd degree sex offenders under that requirement then remedy those concerns? As far as the constitutionality of lifetime for offenders who are already in prison, we have already discussed this scenario and would like to move forward with the bill as it is written. Other states such as Florida who have already implemented lifetime GPS requirements have imposed those sanctions against offenders who were already in the system and have not had any constitutionality challenges arise.

As for the redundancy issue, please remove the duplicate provisions in the sub that require the registration of those offenders twice.

Thanks!

3

*Luke Hilgemann*
*Luke Hilgemann*
*Office of Rep. Scott Suder*
*Wisconsin's 69th Assembly District*
*Room 21 North, State Capitol*
*888.534.0069 or 608.267.0280*

| | |
|---|---|
| **From:** | Dsida, Michael |
| **Sent:** | Thursday, October 13, 2005 2:26 PM |
| **To:** | Hilgemann, Luke |
| **Subject:** | RE: One more change for AB 591 |

That may pose a problem from a constitutional standpoint. As the sub is now drafted, the judge -- not the jury -- determines whether a violation of s. 948.02 (2) or 948.025 (1) (b) involves force or violence. Making those offenders subject to GPS tracking during probation, ES, or parole probably does not increase their penalty. But arguably, making them subject to GPS tracking after they are discharged from probation, ES, or parole increases the penalty for their offenses, in which case, a jury would need to make the determination regarding force or violence.

In addition, requiring lifetime GPS supervision for someone who is currently in prison (or who is out of prison but subject to ch. 980) arguably violates the constitutional prohibition on ex post facto laws (under which a penalty cannot be increased retroactively). You can certainly argue that GPS monitoring is comparable to sex offender registration requirements, which can be imposed retroactively. But registration does not involve monitoring, nor does it require the person to wear a bracelet or something similar. Did you already discuss this issue with Cathlene?

Finally, aside from the few people whose offenses occur federal law or the law of another state, all people who commit a "serious child sex offense," as defined in the bill, are already subject to lifetime sex offender registration. If you make those registrants subject to GPS tracking for life, the provisions in the sub requiring registration for serious child sex offenders who are on probation, extended supervision, parole, or conditional release become redundant. Is that your intent?

I would be happy to discuss any of these issues with you or Rep. Suder. Please let me know how you want me to proceed.

Thanks.

| | |
|---|---|
| **From:** | Hilgemann, Luke |
| **Sent:** | Thursday, October 13, 2005 12:25 PM |
| **To:** | Dsida, Michael |
| **Subject:** | RE: One more change for AB 591 |

No just the offenders who are covered under our bill. Sorry for the confusion.

*Luke Hilgemann*
*Luke Hilgemann*
*Office of Rep. Scott Suder*
*Wisconsin's 69th Assembly District*
*Room 21 North, State Capitol*
*888.534.0069 or 608.267.0280*

| | |
|---|---|
| **From:** | Dsida, Michael |
| **Sent:** | Thursday, October 13, 2005 12:24 PM |
| **To:** | Hilgemann, Luke |
| **Subject:** | RE: One more change for AB 591 |

Does that apply to 2nd degree sex offenses that did not involve the use or threat of force or violence?

| | |
|---|---|
| **From:** | Hilgemann, Luke |
| **Sent:** | Thursday, October 13, 2005 11:19 AM |
| **To:** | Dsida, Michael |
| **Cc:** | Emerson, Anne |
| **Subject:** | RE: One more change for AB 591 |

4

**Subject:** One more change for AB 591

Hey Mike,

We would like to include a catch-all provision in our bill that would allow DOC the ability to place any sex offender on GPS tracking that they deem as a public safety risk. I.e, DOC could place any sex offender up for release on GPS if they feel that person may recommit a sexual offense even if that offender did not meet the statutory criteria in the bill.

I hope this makes sense to you. If you have any questions, please feel free to call. I promise this is the last change, for today anyway! :) Have a great night...

Regards,

*Luke Hilgemann*
Luke Hilgemann
Office of Rep. Scott Suder
Wisconsin's 69th Assembly District
Room 21 North, State Capitol
888.534.0069 or 608.267.0280

---

**Dsida, Michael**

**From:** Hilgemann, Luke
**Sent:** Wednesday, October 12, 2005 12:25 PM
**To:** Dsida, Michael
**Subject:** GPS tracking follow-up and exclusion zone language changes

Hey mike,

Here is the email we received from one of the manufacturers who has implemented similar tracking programs in 38 states. This outlines the use of exclusion areas and what they are intended to do. I think the problem is we don't want to create an actual penalty for the offender to enter these areas, it is more of a tracking tool to let law enforcement know where they are and if they go near a school, a church, a youth center, etc. when and where.

I hope this helps give you an idea of our intent.

*Luke Hilgemann*
Luke Hilgemann
Office of Rep. Scott Suder
Wisconsin's 69th Assembly District
Room 21 North, State Capitol
888.534.0069 or 608.267.0280

**From:** Tom Wharton [mailto:twharton@isecuretrac.com]
**Sent:** Wednesday, September 14, 2005 6:16 PM
**To:** Hilgemann, Luke
**Cc:** Ed Sempek; Bill Jetter; Mark Langer; Tom Wharton
**Subject:** follow up


To: Luke Hilgemann (Scott Suder's Office),


From: Tom Wharton CEO, iSECUREtrac.


Luke, as part of your request for information on the use of ZONES, below is our follow up comments regarding the use of GPS zoning as well as some other comments that may be beneficial to the legislative effort.


1st, there is some merit to what the DOC is stating regarding the use of too many EXCLUSION zones in any particular area, and more importantly, you must be careful about what you put into legislation that would create a FALSE sense of security from the public perception of the legislation. Yet it is important that the DOC make their best efforts to take advantage of any benefits that GPS zoning can offer in supporting public safety and a rapid response to violations.


For example if ZONING is included in the legislation, will that give the public a sense that this will create an immediate siren and the police will be there to apprehend the individual before a crime can be committed??? You must be very cautious about how this is handled, and what you put in legislation needs to be consistent with the protocols that are set up and in use by the department of corrections to respond. For example - if the DOC protocol is 12 hour follow up to zone violations which may be appropriate considering their ability to INSURE a response, and the potential liability if they don't, how important is it that exclusion zone violations occurred for the purpose of immediate response. I would presume they would have a goal of a much more rapid response, but for liability purposes, that protocol would best be a longer period than their true average response time.


I believe if done carefully exclusion zones of the appropriate size and with appropriate grace periods could be set up for a large portion of the elementary schools and nursery schools, or related high risk areas. These would have very small perimeter zones, IE 100 feet and as well grace periods that could be adopted based upon the speed of movement through a zone. But even this will NOT eliminate a crime from occurring. For example an individual could pick a child up will they were walking to school, or a person could cut there equipment off before getting near the school. Or a person could have still quickly driven in, picked up a child, and driven out and stayed within the grace period. It is important that the public does not perceive this as a tool that will stop a crime from occurring. It is important to reiterate that the perception of an offender being watched, (IE that he will be found out of he does something wrong) is in itself what reduces the rate of re-offence. And that the ability to identify a potential offender is increased dramatically.


But it is critical to remember that even though OVERALL re-offence rates will be reduced, CRIMES WILL STILL OCCUR, and you don't want to put yourselves in position of liability or a perception of program failure related to the crimes that do occur. You do not want the public to assume that because exclusion zones are set up around a school that it will insure that an offender is caught immediately if they go in that zone – before they can commit a crime, or that they should assume that a response should have been there sooner. Responsiveness can be based on a number of factors.

7

Schools and other potential "exclusion areas" are often very close to general use roads, grocery stores, eating establishments, work places, and hundreds of other places that would potentially create an impossible living, working or traveling situation for an offender if large zones were created around these locations.

Though I do believe zones can be used carefully for many situations, blanket exclusion zoning for sex offenders is NOT used heavily in Tennessee, Florida, or South Carolina and with many other agencies because of the integrated nature of these locations into society, because of the safety miss-perception that could be created, because of the potential follow up requirements to innocent zone violations, and because of the concern that someone may not follow up fast enough to a violation creating a liability concern or the perception that the GPS systems are NOT working.

The most important benefits of GPS monitoring of sex offenders are as follows:

1. Reducing overall recidivism rates by letting offenders know they are being watched (public safety)
2. Having a faster (NOT IMMEDIATE) response to go after offenders that abscond (break the rules).
3. Eliminating tracked offenders from the list of potential perpetrators of a crime based upon their tracking data.
4. For a tracked offender, be able to use GPS tracking data, or other non compliance date like tampering that would implicate them in a crime.
5. Reduce the cost of jailing and victim support (cost savings)

When considering equipment and systems for monitoring then it is most important to be able to:

1. Insure that equipment is 100% tamper evident (IE the unit can not be opened or manipulated without a notification being created to officers)
2. Insure that it is evident that if an offender is attempting to block the GPS signal motion can be detected that would implicate manipulation or a cuff leave violation would occur IE if the offender attempted to cover the unit to block GPS, then they would also block the Radio frequency signal between the transmitter bracelet and the GPS tracking unit – each of which would implicate manipulation of the system and of none compliance.

These features are critical to insure that an offender that is on a GPS system will NOT be able to use the GPS system that is expected to catch him, as a FALSE alibi. It is important to make sure an offender can not tamper with and fool the system, such that the offender can make claims about their location that were not true.

IN CONCLUSION for the specific legislation:

1. If zoning requirements are added there must be some discretionary capability for the DOC to apply zoning that best supports their ability to mange the offenders in accordance with their response protocols without creating liability issues for the state. **Language such as "The DOC will use their best efforts to implement inclusion and exclusion zones around appropriate locations that would best enhance**

8

public safety and restrict offenders from locations. The DOC will make there best efforts to implement exclusion zones around restricted locations with perimeters of 100 to 250 feet, and with grace periods to allow for the normal course of travel on streets that accommodate standard travel to and from work and residence of the offender, and or inclusion zones around areas that the offenders may be confined, in accordance with the condition of their release."
2. And to insure appropriate system selection. The legislation may also include that "the systems selected have motion detection, Radio Frequency tethering, and tamper evidencing that supports that proper verification and validity of the GPS location and movement of the offender".

Also, each of these would be generally be non restrictive for any vendor that would provide an effective system yet critical to program success.

Public communication should focus on overall reduction in re-offence, and therefore greater public safety, but not complete elimination of re-offence.

I hope this was helpful information in preparing your legislation that will be most effective, yet not too restrictive.

All my best,

Tom Wharton

402-537-0022

## Dsida, Michael

| | |
|---|---|
| From: | Hilgemann, Luke |
| Sent: | Wednesday, October 12, 2005 12:25 PM |
| To: | Dsida, Michael |
| Subject: | RE: AB 591 changes |

Mike that's just fine. I am also sending you the changes we would like to implement for the exclusion zone language in the sub.

*Luke Hilgemann*
*Luke Hilgemann*
*Office of Rep. Scott Suder*
*Wisconsin's 69th Assembly District*
*Room 21 North, State Capitol*
*888.534.0069 or 608.267.0280*

**From:** Dsida, Michael
**Sent:** Wednesday, October 12, 2005 12:07 PM
**To:** Hilgemann, Luke
**Subject:** RE: AB 591 changes

Luke-

1. The question that I had with respect to people who have been discharged under ch. 980 also applies to lifetime GPS monitoring for offenders who are the subjects of bulletins and who are "off paper." Note that there will probably be many more of them than there will be of people who have been discharged under ch. 980.

2. I'm not sure how the third point works with respect to ch. 980. But you may be able to avoid the issue altogether. Aside from cases to which your first bullet point applies, the court has no discretion to order or not order GPS tracking. Therefore, you can just have the statutes specify that offenders will automatically be subject to tracking under specified circumstances without requiring any court order. The only time the court becomes involved is in cases involving younger offenders. In those cases, you can have the person file a petition with the court to ask to be exempted from the requirement (as in s. 301.45 (1m). Is that okay?

Mike Dsida
Legislative Reference Bureau
608/266-9867
michael.dsida@legis.state.wi.us

---

**From:** Hilgemann, Luke
**Sent:** Wednesday, October 12, 2005 9:39 AM
**To:** Hanaman, Cathlene
**Cc:** Emerson, Anne
**Subject:** AB 591 changes

Good morning Cathlene,

Sorry for the delay in getting back to you with our final changes for our GPS bill. We finally have the kinks worked out. We are planning to exec the bill out of committee next Wednesday and would the following changes incorporated by then.

They are:

- An exception to the GPS tracking requirements for youth offenders who do not have intercourse or use threat of violence with a victim under 12 and the offender is under 18 at the time of the offense. Basically the same exception provided for the sex offender registry under (940.225-2)
- We would like the "Special Bulletin Notice" offenders to have lifetime GPS requirements. These are the offenders that Rep. Friske mentioned in our meeting.
- Make sure that GPS is ordered at the time of criminal sentencing rather than the civil sentencing, to eliminate the constitutionality concerns.
- As well as the exclusion zone language changes that we discussed in our meeting.

If you have any questions on these changes please feel free to contact me. Thank you for your continued efforts on this proposal, it is truly appreciated!

Regards,

*Luke Hilgemann*
Luke Hilgemann
Office of Rep. Scott Suder
Wisconsin's 69th Assembly District

*Room 21 North, State Capitol*
*888.534.0069 or 608.267.0280*