UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

MICHAEL J. BELLEAU,

       Plaintiff,

v.                                   Case No. 12-CV-1198 (WCG)

EDWARD F. WALL, et. al.,

       Defendants.

## AFFIDAVIT OF DR. RICHARD W. ELWOOD

**STATE OF WISCONSIN**   **)**
                         **) ss.**
**COUNTY OF Dane**       **)**

**DR. RICHARD W. ELWOOD**, being first duly sworn, on oath states as follows:

1.    I make this affidavit on the basis of my personal knowledge, training, and experience, and review of the institutional records noted below.

2.    The opinions expressed are made to a reasonable degree of professional certainty.

3.    I am employed by the Wisconsin Department of Health Services as a Forensic Evaluator for the Sand Ridge Secure Treatment Center, and have been so employed since 2006.  During that time, I have conducted over 250 sex offender evaluations for purposes of civil commitment determinations.

4. My qualifications and publications are outlined in my curriculum vitae. A true and correct copy is attached to this affidavit as **Exhibit 1004.**

5. As a Forensic Evaluator, my responsibilities and duties include evaluating sex offenders referred for civil commitment under ch. 980.

6. On February 12, 2010, I evaluated Michael Belleau. A true and correct copy of the report from that evaluation is attached to this affidavit as **Exhibit 1005.** I incorporate by reference my analysis and findings in that report into this affidavit, portions of which are summarized and referenced below.

7. The 2010 evaluation was a reexamination of Mr. Belleau's progress. At the time, he was subject to ch. 980 civil commitment based on previous evaluations and a court order.

8. My reexamination was to determine whether Mr. Belleau was, as of the date of the evaluation, a sexually violent person as defined by Wis. Stat. § 980.01(7), and whether he met the §980.08 criteria for supervised release.

9. My evaluation was based on my experience and training, as outlined above and in my CV, and also an interview with Mr. Belleau, a record review, and the application of certain diagnostic tests and standards.

10. My opinion was that Mr. Belleau did not meet the threshold for 980 commitment (Ex. 1005:7).

11.     As stated in my report, my conclusion was that his risk level was no longer high enough to satisfy the statutory standard for civil commitment (i.e., "more likely than not") (Ex. 1005:6).

12.     I did not, however, conclude that Mr. Belleau no longer posed any risk of being charged for or convicted of a new sex offense.

13.     My report contained a summary of Mr. Belleau's charges, convictions, and revocations, as revealed by his records (Ex. 1005:2).

14.     

15.

16.

17.     I evaluated Mr. Belleau based on established risk assessment methods. Taken together and considering Mr. Belleau's age, I primarily relied on "static" risk factors that indicated a low to moderate risk of sexual recidivism (Ex. 1005:3-4).

18.    For example, I noted that Mr. Belleau has previously been revoked

███████████████████████████████████████████████████████

██████████████████████████████████ However, other static

assessment tools indicated a lower risk (Ex. 1005:3).

19.    I gave greatest weight to the "Static-99R" measure, as it takes into consideration age and has a lower margin of error than another static test, "MnSOST-R" (Ex. 1005:3).

20.    The Static-99R is used by most practitioners in Wisconsin and throughout the United States for assessing risk of sex offenders.  It has been studied in numerous of independent studies and has been consistently found to predict sexual recidivism.

21.    Attached to this affidavit as **Exhibit 1006** is a true and correct copy of the Static-99R and Static-2002R Evaluator's Handbook. This is an updated version of the handbook that I used to evaluate Mr. Belleau.  As relevant here, this newer version is not materially different, as it contains the same rates and tables that would have applied to Mr. Belleau.

22.    Static-99R scores may take into account age, relationships, prior convictions involving violence and sex offenses, sentencing dates, convictions for non-contact offenses, and the nature of the victims (whether related, strangers, or male). The Static-99R measure returned a risk of 7%, meaning a

7% chance of Mr. Belleau being charged or convicted of a new sex offense within 5 years, and it returned a 13% percent risk within 10 years (Ex. 1005:3).

23.    I also consulted "dynamic" risk factors. ████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████ I found that Mr. Belleau had not reduced his risk under five of the six dynamic risk factors discussed in my 2010 report (Ex. 1005:4-6).

24.    ██████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████████████████████████

25.    The dynamic risk factors add additional information beyond what is taken into account in the static factors alone. However, I determined that the dynamic factors here did not change my overall assessment that, based on the static risk factors, Mr. Belleau carried a low to medium risk. That meant that Mr. Belleau did not meet the sexually violent person threshold under § 980.01(7) (Ex. 1005:6).

26.    ██████████████████████████████████████████████
███████████████████████████████████████████████████████████

However, I also found that Mr. Belleau was not "more likely than not" to

commit another sexually violent act if released, meaning he did not meet the criteria of § 980.01(7) for continued civil commitment (Ex. 1005:7).

27.     In conjunction with my evaluation, I made a determination in my own notes of what percentage risk for recidivism I believed Mr. Belleau had, taking into consideration appropriate adjustments to his Static-99R score. I did not include that adjusted risk figure in the 2010 report, as it was not the practice at the time to include a particular final percentage of risk.  Rather, my report simply needed to specify whether the patient met the §980.01(7) threshold or not.

28.     I determined at the time that Mr. Belleau posed about a 16% adjusted risk of committing another sex offense within the 10 years after release.

29.     I based that determination on the Static-99R score, but then made an adjustment ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████ Based on the literature available (including extrapolations by recognized experts in the field), I estimated that Mr. Belleau's actual 10-year risk was about 25% greater than the Static-99R figure of 13%.

30.     That risk level was lower than the risk level I typically find for patients I have evaluated as no longer meeting the 980 threshold.

31.    My experience is that a score of "0" on the Static-99R (corresponding to the 13% 10-year risk), which Mr. Belleau scored, is unusually low for ch. 980 patients subject to release (Ex. 1005:3). For reference, a "-3" is the lowest possible score.

32.    My experience over the last several years of conducting these exams is that the patients subject to release scored higher than a "0" and instead usually had scores corresponding to probabilities of recidivism in the 35% to 40% range.

33.    Based on a survey among my colleagues, I tend to find that a lower proportion of offenders meet the ch. 980 criteria for civil commitment, as compared to some of my colleagues.

34.    My experience is that, even when a committed sex offender patient no longer meets the statutory threshold, such as Mr. Belleau, he still poses an elevated sex offense risk as compared to the general population. That is supported by federal statistics, which provide a reasonably reliable estimate of the average risk of any individual male living in the United States. Based on my understanding of risk assessment scholarship and tools, I understand that the risk of recidivism, absent confounding factors, has a half life of approximately 5 years. That would mean that, five years later, Mr. Belleau would have an approximate risk of recidivating of 8%, absent new behaviors or other factors that would affect risk.

35.     I have not evaluated Mr. Belleau since the 2010 evaluation and therefore do not provide a definitive opinion of his current risk.  Nonetheless, it is my opinion that, given what I found in my 2010 evaluation, that it is statistically very probable that Mr. Belleau's risk will always be greater than the average American male who has not offended before.

36.     I also concluded that Mr. Belleau was not eligible for supervised release ███████████████████████████████████████ as defined by § 980.01(8) (Ex. 1005:6-7).

37.     I am aware of a federal Department of Justice study (dated March 31, 2012) that is publically available online. My understanding of that study is that it found that GPS monitoring reduces the risk of recidivism. However, I have not independently evaluated the methods used in that study, and I do not consider myself an expert with regard to GPS monitoring of sex offenders.


                                        **/s/Richard W. Elwood**
                                        **DR. RICHARD W. ELWOOD**

Subscribed and sworn to before me
this 29th day of January 2015.

/s/Susan McCutchin
[Sign Name]

Susan McCutchin
[Print Name]
Notary Public, State of Wisconsin
My Commission expires: 4/28/18.