IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

MICHAEL J. BELLEAU,

     Plaintiff,

    v.                Case No. 12-CV-1198

EDWARD F. WALL, et al.,

     Defendants.

## DEFENDANTS' BRIEF IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Michael Belleau pursues three as-applied challenges to Wisconsin's GPS law, based on the Ex Post Facto Clause, the Fourth Amendment, and equal protection. Belleau's GPS monitoring passes scrutiny under all of these theories—none bar society from taking reasonable steps to monitor someone with Belleau's ██████████████.[1]

Many of Belleau's arguments have flaws in common. Belleau disregards that the GPS monitoring law's primary purpose is to reduce recidivism. GPS monitoring is not an ordinary crime detection tool. It does not reveal what, in particular, he is doing, and does not forbid traveling. The administration of the program involves no regular contact with Belleau,

_____

[1] This response brief and supporting papers supplement the defendants' motion for summary judgment. *See Jones v. Union Pac. R. Co.*, 302 F.3d 735, 740 (7th Cir. 2002) (response arguments properly considered as cross-motion for summary judgment).

and it is not to be confused with the separate sex offender registry that, unlike the GPS program, may come with residency checks. Rather, the GPS law is a passive program with a sensible goal: because Belleau knows he is tracked, it may help counteract his ████████████████████████ ████████████.

## ARGUMENT

### I.   Belleau's GPS monitoring does not violate the Ex Post Facto Clause.

The GPS law is a non-punitive effort to reduce recidivism and, at times, help resolve future crimes. This does not violate ex post facto restrictions. Wisconsin's law involves no ex post facto violation under the cases cited by plaintiff, or *Smith v. Doe*'s framework.

#### A.   The relevant GPS cases support the defendants.

Claims like Belleau's have largely failed to gain traction in the courts, including federal appellate courts, and for good reason. Belleau heavily relies on two state cases, but they are not on point.

Belleau cites *Riley v. New Jersey State Parole Board*, 98 A.3d 544 (N.J. 2014), which addressed New Jersey's distinct GPS monitoring law. Unlike Wisconsin's law, the New Jersey law came with "a monitoring parole officer," "restrictions on [the registrant's] freedom to travel," and otherwise had characteristics equivalent to "parole supervision for life by another name," such as being required to report to the monitoring officer and to allow

the officer into the registrant's home for various reasons. *Id.* at 546-48. The court concluded that the equivalent to parole could not be retroactively imposed. *Id.*

Similarly, Belleau relies on a Massachusetts case, *Commonwealth v. Cory*, 911 N.E.2d 187 (Mass. 2009). Among other differences from the law at issue here, *Cory* dealt with monitoring of probationers where GPS was used to exclude the probationer from certain areas under penalty of arrest and revocation. *Id.* at 190-91.

These cases are not helpful to Belleau because his monitoring is not like probation or parole. It does not forbid him from going where he pleases (Stip ¶ 12; DPFOF ¶¶ 31-41).[2] It does not require Belleau to report to or avoid particular places or people; to refrain from certain activities (such as consuming alcohol); or to complete certain lifestyle-related activities (such as maintaining employment or providing urine samples). And, likewise, it does not come with the powers of revocation. The GPS device simply indicates where Belleau is on a map (Stip ¶¶ 12, 23, Ex. A-D).

Not only are those cases off point, they also do not represent the apparent majority view that GPS monitoring of sex offenders does not run afoul of

---

[2] References to "Stip." are to the joint stipulations at Dkt. 68. References to DPFOF ¶¶ 1-62 are to Dkt. 78 (original proposed findings). References to DPFOF ¶¶ 62-90 are to additional proposed findings being submitted in response to Belleau's motion.

ex post facto. *See State v. Trosclair*, 89 So. 3d 340, 355 & n.7 (La. 2012) (noting the majority view); *see*, *e.g.*, *Hassett v. State*, No. 601-2010, 12 A.3d 1154 (Del. Feb. 8, 2011) (unpublished) (does not implicate the ex post facto clause because the statute is intended for public safety and is not punitive); *People v. Atkinson*, No. 311626, 2014 WL 129269 (Mich. Ct. App. 2014) (unpublished) (lifetime GPS monitoring of sex offender not a punishment).

Among these cases is *State v. Bowditch*, 700 S.E.2d 1 (N.C. 2010), which upheld a North Carolina law similar to Wisconsin's, even though North Carolina's law came with greater burdens. The law had the essential features of Wisconsin's law, including lifetime monitoring and a provision excluding a subset of risky offenders from petitioning to terminate it. *See id.* at 3, 12 n.4. Unlike Wisconsin's statute, the North Carolina law required automatic ninety-day maintenance visits (Wisconsin requires no automatic maintenance appointments), six hours of recharging every day (unlike Wisconsin's one-hour recharge), and restrictions on submerging the ankle bracelet in water of three feet or more (Wisconsin's device can be submerged to fifteen feet) (Stip ¶¶ 35-36; DPFOF ¶¶ 45-47, 53, 74). *See id.* at 4-5.

The North Carolina Supreme Court found that the GPS was simply another version of a permissible regulatory scheme, like the sex offender registry discussed in *Smith v. Doe*, 538 U.S. 84 (2003): "The instant case falls

within the framework established by those precedents for civil, regulatory schemes that address the recidivist tendencies of convicted sex offenders." *Bowditch*, 700 S.E.2d at 6; *see also id.* at 11 (the burdens "'make a valid regulatory program effective and do not impose punitive restraints'" (quoting *Smith*, 538 U.S. at 102)).

The Sixth Circuit came to the same conclusion as to Tennessee's GPS law. *See Doe v. Bredesen*, 507 F.3d 998 (6th Cir. 2007), *cert. denied*, 555 U.S. 921 (2008). Belleau asserts in a footnote that *Bredesen* is distinguishable because the particular plaintiff was, unlike Belleau, on probation (Dkt. 67:15 n. 3). But that detail did not matter to the analysis in *Bredesen*. *See id.* at 1003-07. Rather, consistent with Wisconsin's law, the Sixth Circuit explained that Tennessee's GPS law could apply "for the rest of [a registrant's] life," *id.* at 1001, yet remained "a civil, nonpunitive regime" with non-punitive effects. *Id.* at 1004-07. The same is true with Wisconsin's law.

Thus, the on-point cases do not support Belleau—rather, the courts agree that Belleau's version of GPS is not a punishment.

### B.  Belleau's GPS monitoring is not retroactive punishment for past criminal conduct.

To violate the Ex Post Facto Clause, a law must be both retroactive and a punishment. *United States v. Leach*, 639 F.3d 769, 772 (7th Cir. 2011). As to retroactivity, Belleau contends that the Ex Post Facto Clause forbids

Case 1:12-cv-01198-WCG   Filed 04/06/15   Page 5 of 40   Document 83

"a different and greater punishment upon a person for a criminal act than was associated with the act at the time the person committed it" (Dkt. 67:11). But Belleau's GPS monitoring was triggered by his then-current status as a civilly committed person, and not by his past criminal acts.

The applicable triggering provision, Wis. Stat. § 301.48(2)(b)2., provides that Belleau is subject to the monitoring based on having been discharged from 980 status: *i.e.*, ████████████████████████████████

████████████████████████████████████████████████

*See* Wis. Stat. ch. 980. Belleau is not subject to monitoring based on his convictions or criminal sentence. The GPS law became effective on July 1, 2007. *See* 2005 Wis. Act 431. And the GPS law only applies to persons convicted or on probation or parole after January 1, 2008. Wis. Stat. § 301.48(2)(a). Belleau was off of probation and parole as of January 2005 (Dkt. 69:1-2 ¶ 2).

Thus, the only reason that Belleau is subject to lifetime GPS monitoring is that, at the time that GPS became effective, he was civilly committed, ████

████████████████████ (Dkt. 69:4-5; DPFOF ¶¶ 28-29). Belleau, who bears the burden, does not show that GPS is retroactive in these circumstances.

### C.  The legislature did not intend GPS monitoring of registrants like Belleau to be a punishment.

Even if retroactive, the question remains whether GPS is a punishment. *Smith v. Doe* provides a two-step test, first asking whether the legislature intended to punish; if not, asking if the non-punitive intent should be set aside. *See* 538 U.S. at 92. Here, neither the statutory language nor legislative history supports a punitive intent.

The GPS statute has the non-punitive goal of reducing ongoing risks to Wisconsin citizens.[3] *See*, *e.g.*, Wis. Stat. § 301.48(7m) (monitoring no longer required when registrant moves out of state); Wis. Stat. § 301.48(7)(d) & (e) (providing for termination of monitoring where the registrant "is not a danger to the public" and is incapacitated, which is a provision that applies to all registrants, including Belleau).[4] Belleau points to nothing showing otherwise. Rather, he identifies one subsection, Wis. Stat. § 301.48(1)(b), which simply defines what GPS technology may do:

> (b) "Global positioning system tracking" means tracking using a system that actively monitors and identifies a person's location and timely reports or records the person's presence near or at a crime scene or in an exclusion zone or the person's departure from an inclusion

---

[3] Wisconsin's GPS law is in the same code chapter as Wisconsin's non-punitive sex offender registry law. That location does not support Belleau's punitive argument. *See Smith*, 538 U.S. at 86 (location does not render a law punitive)

[4] Thus, Belleau is incorrect when he asserts that he can "never" be released from the monitoring (Dkt. 67:1).

zone. "Global positioning system tracking" includes comparable technology.

Wis. Stat. § 301.48(1)(b).

Belleau notes the reference to a crime scene, but a potential to associate a registrant with a new crime has nothing to do with punishing Belleau for his past convictions—*i.e.*, a crime prior to the existence of GPS monitoring. When a "law targets only the conduct undertaken by convicted sex offenders after its enactment, it does not violate the Ex Post Facto Clause." *Leach*, 639 F.3d at 773 (discussing punishment related to a sex offender registry).

The non-punitive purpose is reflected in the legislative history. For example, in correspondence sent to Wisconsin legislative staff during the drafting process, the potential to reduce recidivism was the number one reason provided:

> The most important benefits of GPS monitoring of sex offenders are as follows:
>
> 1. Reducing overall recidivism rates by letting offenders know they are being watched (public safety).

(Dkt. 61-1, Ex. 1010:34). Secondary uses include evaluating whether a registrant is present at a crime scene, if, in a particular instance, the GPS fails to dissuade an offender from committing a crime (Dkt. 61-1, Ex. 1010:34). Again, that is not an ex post facto issue because it only applies to future conduct. *See id.*

Belleau references emails in the legislative history between a legislative aide and Wisconsin's Legislative Reference Bureau (Dkt. 67:17). The emails merely point out the possibility of a constitutional challenge related to the retroactive effect of the GPS law (Dkt. 70-5:5-12). Recognizing a potential challenge, however, is not a statement of punitive intent. Belleau also points to a portion of the history discussing a non-enacted version of the GPS law. That version, unlike the enacted law, made GPS coterminous with a criminal sentence (Dkt. 67:17-18). But that version did not become law. The actual law is not limited to timeframes covered by a sentence and, thus, evinces no intent related to imposing criminal sentences.[5]

### D. Belleau cannot meet his burden to transform the GPS law into a punishment.

Unable to show punitive intent, Belleau must come forward with the "clearest proof" to transform the GPS law into a punishment. *Smith*, 538 U.S. at 92. The question turns on five main factors, and none favor Belleau.

---

[5] In a footnote related to punitive intent, Belleau references sex offender registry provisions in Wis. Stat. § 301.46 (Dkt. 67:19 n.6). That statute is not part of the GPS law. The sex offender registry, which has been upheld as non-punitive, is not at issue here. *See Mueller v. Raemisch*, 740 F.3d 1128 (7th Cir. 2014) (upholding the registry as non-punitive).

### 1. GPS applied to Belleau does not impose a legally sufficient disability or restraint.

Belleau focuses on the factor regarding a disability or restraint. He acknowledges, however, that the restraint must be direct and extreme to run afoul of the Ex Post Facto Clause (Dkt. 67:20). That standard is not met here.

A prohibited restraint is something equivalent to imprisonment; information gathering does not qualify. *See Smith*, 538 U.S. at 100. For example, in the context of upholding sex offender registry burdens, the Supreme Court explained that a registry is not a restraint because, unlike prison, it merely requires reporting and updating where the person lives and works; it does not force someone to *be* in a certain location. *Id.* at 101-02. Belleau's GPS monitoring is similar—it provides information about his whereabouts, but does not dictate those whereabouts.

Belleau correctly points out that he must wear an ankle bracelet, but that is not like prison. It does not physically prevent him from leaving his house (Dkt. 67:20). It weighs about eight ounces and must be charged for about one hour per day[6] (Stip ¶¶ 35-36; DPFOF ¶¶ 45-47, 53). Plugging in a

---

[6] Belleau suggests that GPS tracking could include implanting chips (Dkt. 67:18), but he alleges no actual threat of that. In the legislative history, when asked that question, an aide replied that tracking would be with "a tamper-proof bracelet" (Dkt. 70-6:5).

cord may be an inconvenience, but it is not a direct and extreme restraint on where he may go. Belleau is not required to charge his GPS bracelet in a particular location, and the charging cord is sufficiently long that, in a photo submitted by Belleau, the excess length is coiled on the floor as Belleau lies on a bed (DPFOF ¶¶ 84-85; Dkt. 76-1).

Belleau also incorrectly contends, without citation to evidence, that GPS subjects him to "frequent in-person and telephone contact from law enforcement, DOC personnel and technicians from the GPS vendor" (Dkt. 67:21). The record does not support that assertion. Also, this does not identify a restraint.

Belleau points to no evidence that he is frequently contacted by anyone as it relates to the GPS law. Rather, there is evidence that he has been contacted by private technicians a few times over the years to fix the device when it has malfunctioned (DPFOF ¶ 75). Those visits are on an as-needed basis, may be scheduled around Belleau, and are simply to fix a technical problem (DPFOF ¶¶ 51-52, 73-74). In the past, one private technician apparently felt intimidated by Belleau and asked for a police escort for that reason, but that was not an ongoing arrangement (DPFOF ¶ 76).

DOC personnel do not visit Belleau regarding GPS, and only phone him if there is a technical reason (such as a dead battery or malfunction) (DPFOF ¶¶ 70, 83). Belleau is not required to be available for those calls

(DPFOF ¶ 83). And the evidence reveals only one instance where, after Belleau failed to charge his device for an extended period, law enforcement was contacted to check on Belleau's welfare (DPFOF ¶ 80).

None of this is frequent, much less a direct and extreme restraint on Belleau. Instead, it is evidence of limited contacts for reasons incidental to the monitoring. That is permissible. *See Smith*, 538 U.S. at 102 (explaining that the incidental burdens imposed by a sex offender registry "make a valid regulatory program effective and do not impose punitive restraints in violation of the *Ex Post Facto* Clause").

### 2. Belleau's GPS monitoring does not advance a traditional aim of punishment.

Belleau's GPS monitoring is primarily aimed at deterring reoffense, which is a proper regulatory aim. *See Smith*, 538 U.S. at 102 (rejecting the argument that deterrence renders a measure punitive). Belleau asserts that the GPS monitoring is not regulatory because, unlike some sex offender registry information, the GPS data goes to the DOC and not the public (Dkt. 67:22). But public dissemination of information is not the only regulatory way to deter. As discussed in the defendants' opening brief, it is reasonable to think that being tracked, in itself, will make reoffense less likely (Dkt. 79:17-19).

Belleau also asserts that the empirical data does not support the deterrence rationale (Dkt. 67:23), but that line of argument is misguided. The legislature is not required to conduct empirical studies to support something that is, on its face, rational.

Further, recent studies do support a deterrence benefit, as noted in the opening brief (Dkt. 79:18-19). Indeed, Belleau fails to support his own premise about empirical data. He cites a student note that simply asserts, with scant support, that it is inconclusive if GPS reduces recidivism[7] (Dkt. 67:23 n. 8). Belleau also cites a second article that, if anything, cuts against him. After noting some older studies showing no effect, the article states that a more recent comprehensive study revealed a dramatic effect: "a more recent and comprehensive study of high-risk sex offenders released in California between 2006 and 2009 found a rate of a sex-related violation nearly 3 times as great for subjects who received traditional parole supervision as for those who received the GPS supervision (Gies et al., 2012)." Cynthia Calkins, *Sexual Violence Legislation: A Review of Case Law & Empirical Research*, 20 Psychol. Pub. Pol'y & L. 443, 456 (2014). The article

---

[7] Sarah Shekhter, *Every Step You Take, They'll Be Watching You: The Legal and Practical Implications of Lifetime GPS Monitoring of Sex Offenders*, 38 Hastings Const. L.Q. 1085, 1088 n.23 (2011) (primarily relying on a 2007 letter apparently from a California Board to a California official).

goes on to state: "research here offers promise that electronic monitoring could serve as a useful tool in the community management of sex offenders." *Id.*

Thus, contrary to Belleau's argument, the article states that GPS is a potentially useful regulatory tool, not a means to punish.

### 3. Belleau's GPS monitoring is not a traditional form of punishment.

Sensibly, Belleau does not attempt to show that GPS monitoring is a traditional punishment. Rather, Belleau argues that he finds the GPS technology to be embarrassing, and he asserts that embarrassment is a traditional form of punishment. But that line of argument is foreclosed by *Smith*, which makes clear that incidental embarrassment (or even social ostracism) does not render a sex offender regulatory measure punitive. *See Smith*, 538 U.S. at 99.

Belleau points to nothing showing that GPS is designed to embarrass him. Wisconsin does not require that the device be visible; when visible, it is not obviously labeled as a sex offender-specific device (DPFOF ¶46; Dkt. 71-4, 71-5, 71-6). His GPS might emit an audible message, but the only message

that Belleau has ever received is a low battery alert[8] (DPFOF ¶¶ 87-88; Dkt. 71:4 ¶ 16). The purpose is obvious, and Belleau can control whether he receives the message by charging the device. Beyond that, the record supports that Belleau has been visited a few times over the years by technicians to fix his device (DPFOF ¶ 75). The only instance where a technician considered asking for a police escort was when Belleau allegedly threatened the technician (DPFOF ¶ 76).[9] None of this supports the proposition that the GPS law is designed as a system of public shaming.

### 4. Belleau concedes that his GPS monitoring is rationally related to a non-punitive purpose.

The factor asking whether GPS is rationally related to a non-punitive purpose is among the most important. *See Smith,* 538 U.S. at 102 ("rational connection to a non-punitive purpose is a '[m]ost significant' factor" (citation omitted)). Belleau ultimately concedes there is a connection to a rational non-punitive purpose. He states: "protecting the public from sex crimes is a legitimate governmental purpose, and the use of GPS monitoring

---

[8] Belleau asserts in his brief that a device also might omit a message such as "call your officer now," but Belleau does not aver that he has received that or any other message. Belleau has no "officer" because he is not on probation or parole.

[9] Belleau asserts there have been other embarrassing contacts, but he improperly conflates the sex offender registry law and its obligations (including in-person residency checks) with the GPS law and its obligations (which include no such checks) (DPFOF ¶¶ 70-72).

Case 1:12-cv-01198-WCG   Filed 04/06/15   Page 15 of 40   Document 83

could plausibly enhance public safety to some degree . . . ." (Dkt. 67:27). Thus, this important factor is not in serious dispute.

### 5. Belleau's monitoring is not excessive in relation to its non-punitive purpose.

Although Belleau concedes a non-punitive purpose, he argues that GPS monitoring is an excessive means to achieve it (Dkt. 67:27). Much of Belleau's reasoning repeats points already discussed. The following addresses what remains.

Belleau argues that GPS is excessive because it is unnecessary to track him for life due to his age. The record, however, reflects that someone like Belleau will continue to have an elevated risk of sexual reoffense for the remainder of his life, taking age into account (DPFOF ¶¶ 16-18, 20, 23-24, 90). And, more generally, the Supreme Court has approved of lifetime requirements imposed on sex offenders because they are rationally aimed at reducing risks posed by them. *Smith*, 538 U.S. at 104 ("The duration of the reporting requirements is not excessive.").

Belleau points to case law addressing conditions of probation for the proposition that, when a condition of probation is more onerous, it may mean that the condition should not be imposed long term. *See United States v. Quinn*, 698 F.3d 651 (7th Cir. 2012). But Belleau's GPS is not like probation

or parole: among other differences, it does not control what he does or where he goes.

In a related contention, Belleau argues that his sex offenses are too remote to justify monitoring, as his most recent conviction was for 1989 acts. This line of argument has multiple flaws. First, Belleau's monitoring is based on his former status as ███████████████ found to be more likely than not to reoffend from 2004 to 2009 (DPFOF ¶¶ 11-14). Second, Belleau's probation was revoked for ████████████████████████████████ ███████████████████████ (DPFOF ¶¶ 9-10). Third, Belleau is not a typical citizen. His records reflect that ████████████████████████████ ██████████████████ and he remains risky ███████████████████ ████████████ (DPFOF ¶¶ 6-7, 16-26).

To further illustrate, Belleau's risk of recidivism at release (sixteen percent) was lower than most civilly committed people being released. Their risk is very high: usually between thirty-five and forty percent (DPFOF ¶¶ 20-21). But Belleau's risk is not low relative to the rest of the population (DPFOF ¶¶ 23-24). Statistically, he still has an eight percent chance of committing another sex offense, and he will always pose an increased risk (DPFOF ¶¶ 23-24, 89-90).

The lifetime nature of the monitoring thus reasonably corresponds to the reason for monitoring in the first place. As the Supreme Court has stated:

"The excessiveness inquiry of our *ex post facto* jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the non-punitive objective." *See Smith*, 538 U.S. at 105.

In sum, Belleau points to no factor that favors him. Monitoring him makes sense given the ongoing risks that he presents. Ex post facto is not intended to prevent these efforts, and Belleau cannot meet his "clearest proof" burden to show otherwise.

## II. Belleau's monitoring does not violate the Fourth Amendment

After the parties' initial briefs, the Supreme Court issued a per curiam decision that clarified how the Fourth Amendment applies to GPS monitoring of sex offenders. *See Grady v. North Carolina*, No. 14-593, 575 U.S. __, 2015 WL 1400850 (Mar. 30, 2015). The decision contained two notable rulings:

- GPS monitoring of sex offenders is a Fourth Amendment "search" under the trespass analysis in *United States v. Jones*, 132 S. Ct. 945 (2012).

- Whether the monitoring passes constitutional muster depends on whether it is reasonable.

*Grady*, 2015 WL 1400850, at \*2-\*3. The Court remanded for consideration of the reasonableness question.[10]

As to reasonableness, the *Grady* decision explained that the question turns on the "totality of circumstances," and stated that the analysis in two Supreme Court cases is applicable:

- The general reasonableness test from *Samson v. California*, 547 U.S. 843 (2006).

- The special needs doctrine applied in *Vernonia School District 47J v. Acton*, 515 U.S. 646 (1995).

*Grady*, 2015 WL 1400850, at \*3. Belleau's GPS monitoring is permissible under both the *Samson* and *Vernonia* formulations.

### A. Belleau's monitoring is proper under the general reasonableness test.

#### 1. The search is reasonable under *Samson*.

As stated in *Grady*, the Supreme Court's *Samson* decision provides an applicable reasonableness framework. Belleau's monitoring is even more justified than the search upheld as reasonable in *Samson*.

*Samson* states a totality test, where the intrusion is weighed against society's need for the search:

---

[10] Belleau makes a "search" argument based on both trespass (*see Jones*) and expectations of privacy (*see Katz v. United States*, 389 U.S. 347, 361 (1967)). Because *Grady* held that GPS monitoring is a *Jones* search, it does not matter whether it is also a *Katz* search. Either way, once there is a search, the Fourth Amendment question turns on reasonableness.

Case 1:12-cv-01198-WCG   Filed 04/06/15   Page 19 of 40   Document 83

> "[U]nder our general Fourth Amendment approach" we "examin[e] the totality of the circumstances" to determine whether a search is reasonable within the meaning of the Fourth Amendment. Whether a search is reasonable "is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."

*Samson*, 547 U.S. at 848 (citations omitted).

*Samson* applied that framework to intrusive and suspicionless in-person searches of probationers "at any time of the day or night." *Id.* at 846 (quotation marks omitted). The Court nonetheless upheld those searches and seizures as reasonable under the Fourth Amendment. Its analysis focused on the reduced expectations of someone on probation and the state's important interest in "reducing recidivism." *Id.* at 852-53. The Court held: "the Fourth Amendment does not render the States powerless to address these concerns *effectively*." *Id.* at 854 (emphasis in original).

Belleau's monitoring should be upheld under that framework. First, he too has reduced expectations; second, society's interests are compelling; and, third, the monitoring is a measured response to those circumstances.

First, Belleau does not enjoy the same Fourth Amendment expectations as everyone else. For example, *Samson* illustrates that inmates, based on their previous acts and status, have diminished expectations. *See id.* at 852. And it is recognized that, even for "[f]elons whose terms have expired," "[e]stablished criminality may be the basis of legal obligations that differ

from those of the general population," including under the Fourth Amendment. *Green v. Berge*, 354 F.3d 675, 680 (7th Cir. 2004) (Easterbrook, J., concurring) (upholding DNA collection from prisoners under the Fourth Amendment); *see also Bowditch*, 700 S.E.2d at 11 (collecting cases from the Fifth, Ninth, and Fourth Circuits regarding the proposition that "convicted felons do not enjoy the same measure of constitutional protections, including the expectation of privacy under the Fourth Amendment").

Belleau's criminality and ███████████ are documented throughout the briefing and submissions—even more so than most felons, it makes sense that someone like Belleau would have different obligations.

Second, society has a compelling interest in reducing the likelihood that Belleau will sexually assault another child. That crime is devastating and comes with ongoing effects, as the Western District recently noted:

> Indeed, "[t]he impact of these crimes on the lives of the victims is extraordinarily severe." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 508 (9th Cir.1994); *see also* Rainville, Christina, *Using Undiagnosed Post–Traumatic Stress Disorder to Prove Your Case*, Child Law Pract. (August 2012) (noting that "90% of children who are sexually assaulted develop PTSD, which is a severe and disabling neurological response to trauma").

*Dougan v. Pollard*, No. 11-CV-193, 2013 WL 6846000, at *8 (W.D. Wis. Dec. 30, 2013). There is reason to think—both logically and based on recent studies—that a registrant's knowledge that he is tracked has the potential to reduce the likelihood of reoffense (*see* Dkt. 79:18-19 (citing studies)).

The monitoring also has a secondary use and social benefit: if the deterrence fails in a given case, then at least GPS provides a tool for getting someone off the street so the assaults do not continue (*see* Dkt. 61-1, Ex. 1010:34). A similar purpose—warrantless collection of prisoners' DNA data for "possible use in solving past and future crimes"—has been cited as compelling by the Seventh Circuit. *See Green*, 354 F.3d at 677.

Third, in these circumstances, the GPS monitoring is not unduly intrusive. The search simply consists of a point on an internet-style map showing, in a general way, where Belleau is (Stip ¶¶ 12, 23, Ex. A-D). It does not show what he is doing in particular, or what room he is in when at home. Nothing about the program allows police or other state actors to stop Belleau and physically search him, or to enter his home to search it. Thus, it is less intrusive than the searches and seizures upheld in *Samson*.

In sum, the GPS monitoring reasonably balances Belleau's risks and society's interests and should be upheld.

### 2. None of Belleau's arguments properly take into account his circumstances.

Belleau's brief takes a scattershot approach to the Fourth Amendment. His contentions are either irrelevant, undeveloped, or do not take into account the *Samson* reasonableness test.

First, Belleau points to events when he was first released from civil commitment in 2010. This argument about historical events is irrelevant. Belleau discusses that five days passed between a state court's ruling that he should be released (July 2, 2010) and the effective date of the court's order (July 7, 2010) (Dkt. 67:32). Belleau was released on July 7, 2010, consistent with the court order (DPFOF ¶ 29; Dkt. 73-1: Ex. 1008:9-10).

Thus, Belleau merely points out that he was released in compliance with a court order—that does not state a claim of any sort. Belleau's apparent belief that he should have been released a few days earlier would have been properly directed at the state trial court that issued the release order. It has no bearing on his claims against the DOC here. Further, these past and completed acts have no bearing on the relief Belleau seeks: an injunction, not damages for past events.

Second, Belleau argues that GPS monitoring is a "seizure" because he has to recharge his device one hour per day (Dkt. 67:34). It suffices to say that Belleau does not support this one-paragraph argument legally. He invokes "stop and frisk," but no one is frisking Belleau when he charges the device, and no one tells him where to charge the device or at what time of day (DPFOF ¶¶ 84-86). This argument should be rejected.

Third, Belleau argues that visits by "personnel and private vendor technicians" violate the Fourth Amendment (Dkt. 67:34-35). This argument,

too, is undeveloped. The record reveals that private vendor technicians (who are not law enforcement) visit registrants on an as-needed basis to fix technical problems, and that these visits can be arranged at a mutually agreeable time (DPFOF ¶¶ 52, 63, 73-75). Belleau points to no support for treating that as a Fourth Amendment seizure, and there is no evidence that the private vendor searches Belleau or his home, forces Belleau to be at home at a particular time, or that the visits relate to crime detection.

Belleau's related assertion—that DOC staff sometimes come to his residence with law enforcement—incorrectly characterizes the facts. Similarly, he incorrectly asserts, without citation, that DOC may knock on his door, or send law enforcement to do so, out of curiosity (Dkt. 67:31). There is no evidence of that ever happening, or of it being permissible under the GPS law or DOC practices (DPFOF ¶ 70). DOC staff does not make in-person GPS-related visits at all—rather, if there is a malfunction, a private vendor arranges a time to meet with the registrant to fix it (DPFOF ¶¶ 51-52, 70, 73).

If Belleau otherwise has been visited, it relates to other laws or obligations, and not GPS (DPFOF ¶¶ 71-72). For example, he appears to refer to sex offender registry residency verification checks, which are not GPS-related obligations (DPFOF ¶¶ 71-72). Further, Belleau states that these checks are at his front door (Dkt. 67:35), not that anyone searches him

or forces their way in. Belleau develops no argument showing that, even if this were relevant to his GPS monitoring, that it would be impermissible. *See Kentucky v. King*, 131 S. Ct. 1849, 1862 (2011) ("When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do.").

Fourth, Belleau correctly points out that the monitoring is a *Jones* "search," but he fails to develop an argument that addresses the key question: whether that search is reasonable. Rather, Belleau incorrectly assumes that, if this is a *Jones* search, the Fourth Amendment was violated absent a warrant and/or some level of particularized suspicion (*see* Dkt. 67:33-34, 37-38). But the *Jones* court made clear that it was not reaching the reasonableness question—not that there was no reasonableness question. *Jones*, 132 S. Ct. at 954. And, in *Grady*, as here, a warrant was not in play, and neither was particularized suspicion. *Grady*, 2015 WL 1400850, at *2-*3. What matters is reasonableness, something that Belleau leaves unaddressed.

In sum, Belleau fails to show that his GPS monitoring is unreasonable under the *Samson* test.

**B.   The monitoring is justified by the special needs doctrine.**

*Grady* identifies a second relevant case, *Vernonia School District 47J v. Acton*, 515 U.S. 646 (1995), which applied the special needs doctrine. Belleau's GPS monitoring is squarely a special need and, thus, the doctrine provides a separate basis for upholding the monitoring.

The Supreme Court has explained: "we have upheld certain regimes of suspicionless searches where the program was designed to serve 'special needs, beyond the normal need for law enforcement.'" *City of Indianapolis v. Edmond*, 531 U.S. 32, 40 (2000) (citations omitted). The special needs doctrine does not apply where "the primary purpose of the . . . program is to uncover evidence of ordinary criminal wrongdoing" but rather applies to situations where that is not the primary purpose. *Id.* at 42.

*Edmond* addressed what was primarily a "normal need": "a highway checkpoint program" conducted by police that "unquestionably has the primary purpose of interdicting illegal narcotics." *Id.* at 40. In contrast, *Vernonia* upheld searches outside the norm: suspicionless random drug testing of student athletes based a reasonable need to combat the school's drug culture. *See Vernonia Sch. Dist.*, 515 U.S. at 648-49, 664-65.

Belleau's monitoring is not administered by police to detect a present crime, as in *Edmond*. It also is unlike the "dragnet-type" covert law enforcement operation discussed in *United States v. Jones*. 132 S. Ct. at 952.

Rather, Belleau's GPS monitoring is more like a sex offender registry—its operation is not secret and it is designed to provide information regardless whether someone is engaged in a crime. Like a sex offender registry, it has the primary goal of protecting society, not of solving crime—DOC is not a crime-solving entity. Thus, it is similar to the suspicionless search in *Vernonia*, which was directed at promoting a public good apart from detecting a particular crime.

Consistent with that, the legislative history states a primary purpose of reducing "overall recidivism rates" and promoting public safety "by letting offenders know they are being watched" (Dkt. 61-1, Ex. 1010:34). It also states secondary uses, including "[e]liminating tracked offenders from the list of potential perpetrators" of a crime and, if not eliminated, including them (Dkt. 61-1, Ex. 1010:34). Indeed, knowledge that monitoring data could be used in the future by law enforcement is what makes monitoring a powerful deterrent.

Further, the potential use of data if a crime were committed simply recognizes that GPS is intended to reduce, but cannot eliminate, recidivism. In other words, if someone is intent on reoffending, GPS may still serve a useful purpose. That secondary purpose—using data to learn if a registrant was at a crime scene—also falls within the special needs doctrine. Storing data for potential future use is not the same thing as an investigation

of a specific crime. To illustrate, when it came to DNA collection from inmates, the Seventh Circuit adopted the reasoning that, "[a]lthough the state's DNA testing of inmates is ultimately for a law enforcement goal," it fits the definition of a special needs search "since it is not undertaken for the investigation of a specific crime." *Green*, 354 F.3d at 678 (citation omitted).

The reality on the ground supports the special nature of the monitoring. Police do not administer the GPS monitoring and only have access to GPS data if specifically requested, much like a DNA database might function (DPFOF ¶¶ 63-68). Police do not make such requests frequently (DPFOF ¶ 65). In fact, police have never requested Belleau's GPS data for a criminal investigation of him[11] (DPFOF ¶¶ 67-68).

In sum, Belleau's monitoring is not a typical crime detection measure. Rather, it is a sensible effort to reduce recidivism when it comes to someone

---

[11] The submissions reflect three instances of potential police involvement, none of which relate to ordinary crime detection. One had to do with Belleau allegedly intimidating a privately employed GPS technician, who then asked for the option to have a police escort; but an installer later said no assistance was needed (DPFOF ¶ 76). Another instance came one day after Belleau's release from civil commitment, when local police and DOC employees were unable to locate Belleau (DPFOF ¶ 69). The GPS data helped locate him, and that was the end of it (DPFOF ¶ 69). Finally, Belleau was contacted twice about tampering with the device; one of those times he actually had cut off the device (Dkt. 70-10:2, 5). There is no evidence that Belleau was punished for tampering or attempted tampering.

like Belleau. The measures here do not include controlling where he may travel or hands-on searches or detentions. Thus, both under *Samson*'s general reasonableness analysis, and the special needs doctrine, the monitoring should be upheld.

### III. Belleau's new equal protection challenge should be rejected because it was not pled, Belleau fails to support it, and the law survives under any level of scrutiny.

On summary judgment, Belleau has changed his equal protection argument to add an unpled and undeveloped claim based on fundamental rights. Specifically, Belleau adds an argument that the Equal Protection Clause is violated by differently burdening his fundamental rights of travel, privacy, and association without satisfying strict scrutiny. This claim should be disregarded because it was not pled. But, even if the Court decides to address it, the argument fails because Belleau has not established that the law improperly impinges on his fundamental rights.

#### A. Belleau's new equal protection challenge should be disregarded because it was not pled.

Belleau's amended complaint makes two specific Fourteenth Amendment claims, but not the fundamental-rights claim that he now argues at summary judgment. Rather, the first claim pled simply challenged the distinction between registrants who can and cannot petition to have the GPS device removed after twenty years (Dkt. 34:13-14 ¶¶ 48-52). The second claim pled

was a procedural due process claim that challenged inclusion and exclusion zones (Dkt. 34:14-15 ¶¶ 53-58). Belleau has abandoned that procedural due process claim at summary judgment.[12]

Rather, on summary judgment, Belleau now argues a third and different claim: that the Equal Protection Clause is violated by differently burdening the fundamental rights of travel, privacy, and association of those subject to monitoring, without satisfying strict scrutiny (Dkt. 67:44-50). It is not proper to first raise this claim in a summary judgment brief. For example, in *Burks v. Wisconsin Department of Transportation*, 464 F.3d 744 (7th Cir. 2006), the Seventh Circuit explained that it was disregarding a constitutional claim argued in a brief when it was not pled, and further explained that the district court correctly disregarded the claim at summary judgment for the same reason. *Id.* at 758 n.15. Likewise, Belleau's unpled fundamental rights claim should be disregarded.

---

[12] It bears mentioning that Belleau misstates the effect of exclusions zones when they are applied to "maximum discharge" registrants. He suggests that the zones create areas that the registrant "may not enter" (Dkt. 67:7). That is incorrect. The zone, if one exists, merely triggers an alert, but that alert does not require the maximum discharge registrant to relocate (Dkt. 68:1-2 ¶3; Dkt. 68:3-4, ¶11; DPFOF ¶¶ 31-32).

### B. Belleau's new equal protection claim should be rejected because he has not come forward with facts supporting it.

If this Court nonetheless entertains Belleau's new claim, it should be rejected because he has not come forward with facts supporting it.

Belleau has neither pled nor submitted facts showing he is similarly situated to offenders who are not subject to the monitoring.

To establish an equal protection claim, Belleau must first show that he was treated less favorably than other similarly situated persons or groups— an essential element of the equal protection analysis. *See Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009) (stating the elements). Belleau is subject to lifetime GPS monitoring based on his former status as a civilly committed violent sex offender, pursuant to Wis. Stat. § 301.48(2)(b)2.[13] As such, Belleau must show that former civilly committed patients like him are similarly situated to offenders that are not subject to the monitoring. Belleau has not done this, nor can he.

As discussed in the defendants' opening brief, to commit an individual under Wisconsin's civil commitment chapter, ch. 980, a fact-finder must determine that the individual is ███████████████ (Dkt. 79:3-4).

---

[13] To the extent that Belleau is trying to make an equal protection claim on behalf of individuals subject to lifetime monitoring through a different subsection of Wis. Stat. § 301.48(2), Belleau does not have standing to bring such a claim. Belleau is not subject to monitoring based on his convictions, as those triggering provisions only apply to persons convicted or on probation or parole as of January 1, 2008. Wis. Stat. § 301.48(2)(a).

Case 1:12-cv-01198-WCG   Filed 04/06/15   Page 31 of 40   Document 83

Wis. Stat. § 980.06. A ███████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████.” Wis. Stat. § 980.01(7). ████████

are defined as serious contact sexual offenses. *See* Wis. Stat. § 980.01(6).

Belleau has made no attempt to show that such individuals are similarly

situated to those not subject to the monitoring (i.e., ████████████████

███████ By definition, those non-monitorees have not been adjudicated to

have the chapter 980 characteristics justifying civil commitment.

Belleau points to no facts showing that these two groups are the same.

Thus, Belleau's new equal protection claim also should be rejected for

failing to plead or establish facts to support it.

### C.   Belleau fails to show that the GPS law implicates his fundamental rights.

Belleau newly claims that lifetime GPS monitoring violates the Equal

Protection Clause because it infringes on his fundamental rights to privacy,

association, and travel, without satisfying strict scrutiny. This claim fails for

yet another reason: Belleau does not develop the arguments legally.

### 1.   Privacy.

Belleau does not attempt to develop a separate equal protection privacy

argument (Dkt. 67:45). Instead, he merely references his Fourth Amendment

argument discussed above. Putting a different label on the same argument is not a developed legal theory justifying separate analysis. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived.").

It is not clear, but Belleau seems to conflate, without explanation, general privacy issues with the fundamental right to privacy implicated by equal protection and substantive due process. He does not explain specifically what type of fundamental privacy right the law allegedly infringes on (sex, reproduction, family), or how. It suffices to observe that substantive due process case law recognizes a limited right of "privacy" related to sex, reproduction, and the family. *Ill. Psychol. Ass'n v. Falk*, 818 F.2d 1337, 1342 (7th Cir. 1987). GPS does not burden any of these things in a material way.

If Belleau believes otherwise, he was required to develop this argument, but has not. "In making an equal protection challenge, it is the claimant's burden to 'demonstrate in the first instance a discrimination against [him] of some substance.'" *Clements v. Fashing*, 457 U.S. 957, 967 (1982). Belleau's argument is insufficiently developed to allow for further response. *See Estate of Moreland*, 395 F.3d at 759; *see also Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (summary judgment requires a party to come forward with its best evidence and argument).

## 2. Association.

Belleau also asserts that GPS monitoring improperly infringes on his fundamental right of association. But Belleau again fails to develop his argument beyond merely alleging that disclosure of his whereabouts chills his associational and expressive freedoms (Dkt. 67:47).

It suffices to observe that the First Amendment right to association has two components. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984). First, the right of intimate association encompasses the right to enter into and maintain certain close and intimate human relationships, such as family relationships. *Pi Lamba Phi Fraternity, Inc. v. Univ. of Pitt.*, 229 F.3d 435, 438 (3d Cir. 2000) (citing *U.S. Jaycees*, 468 U.S. at 617–18). Second, the right to expressive association protects "the right to associate for purposes of engaging in those activities protected by the First Amendment—speech, assembly, petition for redress of grievances, and the exercise of religion." *U.S. Jaycees*, 468 U.S. at 618.

Belleau does not sufficiently explain how his associational freedoms have been affected. *See Clements*, 457 U.S. at 967 (claimant's burden to demonstrate that there is substance to his claim). Belleau generally asserts that the government can use GPS monitoring to determine when he visits family members, friends, clinics, church, or his attorney. But Belleau does not cite any evidence to support that the GPS monitoring actually reveals *who* is

visiting or *what* he is doing, as opposed to just showing a dot—much less does he support the proposition that the dot on a map somehow prevents his associations. Belleau's movements are not made public, the GPS monitoring does not restrict whom Belleau can visit or where he can go, and it comes with no punishment for movements or associations (Stip. ¶¶ 3-4, 12; DPFOF ¶¶ 31-41).

Belleau fails to establish that the GPS monitoring law has any actionable effect on a fundamental right of association.

### 3. Travel.

Belleau also argues that GPS impermissibly burdens his fundamental right of travel, but again fails to develop it. Rather, this is just a relabeling of his privacy argument. Belleau merely alleges that constant surveillance discourages certain movements by disclosing information he would prefer to keep private (Dkt. 67:48). That is not a travel claim: the GPS monitoring law does not restrict where he can go, and does not prohibit him from any type of intrastate or interstate travel (DPFOF ¶¶ 39-40).

 The "right to travel" embraces several components. "It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that

State." *Saenz v. Roe*, 526 U.S. 489, 500 (1999). And, as Belleau notes, Wisconsin courts have found a constitutional right to intrastate travel as well. *Brandmiller v. Arreola*, 199 Wis. 2d 528, 535, 544 N.W.2d 894 (1996).

Belleau cites *Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974), as support for the proposition that the fundamental right to travel includes protection from regulations that discourage interstate travel. But that case is not on point. It addressed a year residency requirement that was a prerequisite for indigent people to receive nonemergency medical care—that "durational residence requirement" was impermissible because it discouraged interstate travel by depriving new arrivals of "a basic necessity of life." *See id.* at 251-52, 254-61.

Belleau fails to connect that scenario to his GPS monitoring. He is not a new resident being forced to wait for a basic necessity. Rather, his argument is that he dislikes being monitored, which has nothing to do with travel (Dkt. 67:48).

### D. Even if a fundamental right is implicated, the GPS law satisfies strict scrutiny.

Belleau does not develop an argument that a fundamental right is actually implicated by the GPS monitoring law. But even if he did and could prove that a fundamental right was at issue, Belleau's claim would fail under a strict scrutiny analysis.

"Under strict scrutiny, the government has the burden of proving that . . . classifications 'are narrowly tailored measures that further compelling governmental interests.'" *Johnson v. California*, 543 U.S. 499, 506 (2005) (citation omitted). "The narrow tailoring inquiry requires that [the court] ask whether there are 'other, reasonable ways to achieve th[e] goals with a lesser burden on constitutionally protected activity.'" *Doe v. City of Lafayette, Ind.*, 377 F.3d 757, 773 (7th Cir. 2004) (citation omitted).

Belleau acknowledges that protecting public safety and preventing crime are compelling governmental interests (Dkt. 67:48). He claims, however, that the law is not narrowly tailored because it is both under-inclusive (by not applying to individuals that committed non-sexual serious crimes) and over-inclusive (because it continues to apply to offenders as they age). That argument does not hold up to scrutiny given the purpose of the monitoring.

Rather, the law is narrowly tailored because, as discussed in previous sections, it is intended to help reduce recidivism via the knowledge that a registrant is being monitored (Dkt. 61-1, Ex. 1010:34). People like Belleau, who have met the high bar of civil commitment ██████████████████████ have a lifetime elevated risk to reoffend, even after their discharge and as they age (DPFOF ¶¶ 20, 23-24, 89-90). It is thus not under-inclusive to omit people who have not been subject to the civil commitment findings, and it is

not over-inclusive to continue monitoring for life, given that the risks continue for life.

The Supreme Court has acknowledged the significant risks and "grave concerns" posed by sex offenders. *Smith*, 538 U.S. at 103 (citing US DOJ statistics and prior cases). And studies have found that, "[c]ompared to non-sex offenders released from State prisons, released sex offenders were 4 times more likely to be rearrested for a sex crime."[14] GPS monitoring is far less burdensome than continued incarceration or civil commitment. The law survives strict scrutiny because there is not a less restrictive means of carrying out the goal of reducing recidivism in this class of sex offenders.

## IV. Belleau's original equal protection challenge fails because he is not similarly situated to registrants who can petition to remove the GPS device.

The foregoing addressed Belleau's equal protection argument raised for the first time in his brief. He also pursues a second equal protection claim: that the GPS monitoring law draws an unconstitutional distinction between registrants who can eventually petition for removal of the GPS device and offenders like Belleau. This claim relates to a provision that allows other

---

[14] U.S. Department of Justice, Bureau of Justice Statistics, *Recidivism of Sex Offenders Released from Prison in 1994*, Nov. 2003, at 1-2, *available at* http://www.bjs.gov/content/pub/pdf/rsorp94.pdf (last visited 4/6/15).

Case 1:12-cv-01198-WCG   Filed 04/06/15   Page 38 of 40   Document 83

covered sex offenders—but not civilly committed ones—to petition for removal of GPS after twenty years. *See* Wis. Stat. § 301.48(2)(b) and (6)(b)3.

Belleau acknowledges that the rational basis standard applies to this claim (Dkt. 34:13-14 ¶52). And, under rational basis, "a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Romer v. Evans*, 517 U.S. 620, 632 (1996). Further, Belleau must first show that he was treated less favorably than other similarly situated persons or groups. *See Srail*, 588 F.3d at 943 (stating elements).

As explained in the defendants' opening brief (Dkt. 79:39-44), Belleau is not similarly situated to individuals who may petition for removal of the device: civilly committed 980 patients are, by definition, those that were ████████████████████████████ and a heightened risk of future sexual violence. *See* Wis. Stat. § 980.01(6)-(7); Wis. Stat. § 980.06. The same cannot be said for non-980 sex offenders who have the twenty-year petition option. Likewise, there is a rational basis supporting treating 980 patients differently: it is reasonable to believe that a person who has met the 980 criteria is more dangerous going forward than someone who has not.

Belleau's original equal protection claim should be dismissed.

## CONCLUSION

This Court should dismiss Belleau's claims and grant summary judgment in favor of the defendants.

Dated this 6th day of April, 2015.

Respectfully submitted,

BRAD D. SCHIMEL
Attorney General

***s/Anthony D. Russomanno***
ANTHONY D. RUSSOMANNO
Assistant Attorney General
State Bar #1076050

ABIGAIL C. S. POTTS
Assistant Attorney General
State Bar No. 1060762

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-2238 (*AAG Russomanno*)
(608) 267-7292 (*AAG Potts*)
(608) 267-2223 (fax)
*russomannoad@doj.state.wi.us*
*pottsac@doj.state.wi.us*